THE RIVERSIDE COAL COMPANY *vs.* THE AMERICAN COAL COMPANY.

First Judicial District, Hartford, October Term, 1927.

WHEELER, C. J., MALTBIE, HAINES, HINMAN and BANKS, Js.

An allegation that a prior contract was superseded by a subsequent agreement, and that the latter was accepted in satisfaction of the former, presents an issue of fact.

A "novation" is a new contract into which a new party is introduced, while a "substitute contract" is a new contract involving the same parties.

If a new contract covers the same subject-matter and has the same scope as an earlier one so that the terms of the two are incon-

Riverside Coal Co. *v.* American Coal Co.

sistent either in whole or in a substantial part, it will, as a general rule, be held to abrogate the earlier one *in toto* and to take its place, even though there is no express agreement to that effect.

Upon a demurrer, a pleading which sets forth a written agreement is to be tested not only by the writing itself, but also by the facts which are provable under the allegations.

To the plaintiff's complaint upon a contract for the purchase by the defendant of fifteen hundred tons of Scotch coke at $12 per ton, to be imported at New Haven, and shipped to the defendant at Hartford, the defendant answered that after disputes had arisen because of delay in the arrival of the coke in New Haven, a new contract was entered into for the delivery of a like quantity at Hartford at a price of $6.50 per ton, and provision made concerning the payment of freight, division of demurrage and other incidents of the transaction not included in the first agreement. *Held:*

1. That, upon demurrer to the answer and in rendering final judgment, the trial court properly ruled that the second contract was intended to discharge the first, and was not a mere executory accord.

2. That this construction was fortified by the trial court's finding of the unforeseen circumstances which arose between the making of the first and second contracts and which made the first of doubtful value to either party, including the settlement of an anthracite coal strike with its depressing effect upon the market value of coke, and the defendant's claim that, because of the statute of frauds, the earlier agreement was not enforceable.

3. That even if the second agreement had been an executory accord, *it would seem* that the delayed payment by the defendant of a lesser amount than that claimed to be due by the plaintiff, constituted adequate performance of the defendant's promise to pay "on presentation of invoice," since that provision might well be held to contemplate an invoice unobjectionable in form and correct in amount, whereas the one submitted by the plaintiff involved a discrepancy in weights and was figured on the basis of the first contract price with a reduction by credit memorandum to the price fixed in the second contract.

4. That in making payment to the plaintiff the deduction by the defendant of the plaintiff's share of the demurrage charges, for all of which the defendant was primarily liable, was not unreasonable.

A finding will not be corrected to include facts which would not affect the conclusions of the trial court.

Argued October 6th—decided November 4th, 1927.

ACTION to recover the purchase price of a quantity of coke alleged to have been sold by the plaintiff to the defendant, brought to the Superior Court in Hartford County, where the plaintiff's demurrer to the second and third defenses of the answer was overruled (*Nickerson, J.*) and the issues were tried to the court, *Jennings, J.;* judgment for the plaintiff for $7,850, from which it appealed. *No error.*

The complaint alleged that on or about February 1st, 1926, the defendant contracted to purchase of the plaintiff fifteen hundred net tons of Scotch coke, to be imported by the plaintiff, at a price of $12 per ton, same to be unloaded at New Haven and shipped by rail to defendant at Hartford; that the plaintiff imported the coke and shipped it to defendant, whereby the defendant became obligated to pay the plaintiff $17,996.40, less an advance payment of $2,000.

The defendant denied all these allegations except that certain coke was shipped to it. In a second defense it alleged that under the February contract the coke was to arrive at Hartford on or before February ——, but the boat carrying it did not arrive at New Haven until March 8th; that thereafter disputes arose because of the delay in arrival, and on March 17th the parties executed a contract with regard to the purchase and sale of the coke, which contract was annexed to the answer; that the defendant, pursuant thereto, paid the plaintiff $2,000; and, in paragraph five, that the plaintiff received and accepted this contract in full satisfaction of the liability alleged in the complaint. A third defense, of which all of the second defense except paragraph five was made a part, further alleged that the weight of the shipment, as stated by the railroad company, was 1,494.75 tons; that the plaintiff never presented an invoice in accordance with the weight as so reported; that the demurrage, of which the plaintiff

by this contract agreed to pay one half, was $614; that on April 9th the defendant mailed to the plaintiff a check for $7,408.88, but the plaintiff refused to receive it; and that the defendant has been and is ready, willing and able to pay the plaintiff all sums due it pursuant to the terms of this contract.

Demurrers to the second and third defenses were overruled, *Nickerson, J.;* thereafter a reply to these defenses was filed, and trial had on the merits. At the close of the testimony the plaintiff, at the suggestion of the court, amended its complaint by adding a second count based upon the March contract, and the judgment rendered was based thereon.

The terms of the contract, which was marked Exhibit 1, are set forth, sufficiently for present purposes, in the course of the opinion.

*Lawrence A. Howard,* with whom, on the brief, was *Carroll C. Hincks,* for the appellant (plaintiff).

*Josiah H. Peck,* with whom was *Frederick H. Waterhouse,* and, on the brief, *Nathan A. Schatz* and *Louis M. Schatz,* for the appellee (defendant).

HINMAN, J. Determination of all of the assignments of error relating to both the decision on the demurrer and the judgment rendered, as the plaintiff aptly concedes, turns upon the construction and effect accorded the contract of March 17th, 1926, which will be hereinafter referred to as the "second contract." The prior (February) agreement will be designated as the "first contract."

The first ground of the demurrer to the second defense and all of the grounds of the demurrer to the third defense, were to the effect that it did not appear therein that the second contract was accepted in satisfaction of the first, but did appear that the first should be dis-

charged only upon the performance of the second. The other ground of demurrer to the second defense was, that the allegations of paragraph five thereof constitute conclusions of law only. As to this, the court correctly ruled that all of the allegations of this defense, including those of paragraph five, presented issues of fact. *Blakeslee* v. *Water Commissioners,* 106 Conn. 642, 649, 139 Atl. 106.

All of the other grounds are based upon the general theory and contention that the second contract contemplates an accord and satisfaction, which could become completed and terminate the obligations of the defendant under the first contract only by complete performance according to its terms, instead of being, as the defendant alleged and claimed, a complete substitute for the first contract, which rescinded and superseded the latter and became the only agreement between the parties on the subject, its effect in extinguishing the first contract being in no way dependent upon whether the second contract was afterward completely performed by the defendant. The same question is presented by, and its determination is decisive of, the appeal on the merits—that is, whether, as the court held, both on the demurrer and in rendering final judgment, the second contract is to be regarded and given effect as such a substitute contract, or, on the other hand, amounts only to an executory accord, lacking, by reason of alleged failure to perform by making payment on presentation of invoices, the concomitant of satisfaction necessary to abrogate the rights of the plaintiff to rely and recover upon the first contract.

The court, in adopting the first of these alternative contentions, refers to the transaction as a "novation," which term is usually used with reference to instances in which a new party is introduced into the new contract, while "substitute contract" is the designation

commonly employed to cover agreements between the same parties which supersede and discharge prior contract obligations. 3 Williston on Contracts, § 1865. There is, however, no distinction so far as concerns the legal effect.

We think that the language of the second contract is, of itself, clearly sufficient to place it in the category of substitute contracts. Its plain intent and effect are that instead of the February arrangement, therein described, by which the plaintiff agreed to sell and the defendant agreed to buy the specified quantity of coke at $12 per ton delivered at Hartford, the same parties agreed to sell and to buy, respectively, a like quantity but at a price of $6.50 per ton (instead of the $12 called for by the first agreement) delivery to be at New Haven (instead of at Hartford), and making provisions concerning payment of freight, division of demurrage, and other incidents of the transaction not present in the first agreement. Being thus "made by the same parties . . . but containing terms inconsistent with the former contract, so that the two cannot stand together," it exhibits the characteristics, and responds to recognized tests, indicating a substitute contract. *Housekeeper Pub. Co.* v. *Swift,* 97 Fed. 290, 294; 3 Williston on Contracts, § 1826. Furthermore, we think that an intent that the agreement to so sell and buy, on the substituted terms, shall discharge the prior contract and all claims and demands growing out of it, is unmistakably expressed by the language used.

The nature and effect of the second contract as alleged and claimed by the defendant is, therefore, borne out by the writing itself, to the exclusion of the interpretation claimed by the plaintiff and upon which the efficacy of its demurrer depends. *Valente* v. *Chieppo,* 97 Conn. 719, 723, 117 Atl. 801. Moreover, the defenses are to be tested, on demurrer, not only by the

writing itself, but also by the facts which are provable under their allegations and which elucidate the making and the meaning of the writing. *Mills* v. *Roto Co.,* 104 Conn. 645, 647, 133 Atl. 913; *Blakeslee* v. *Water Commissioners, supra,* p. 649. The construction adopted by the trial court and affirmed by us finds substantial confirmation in the circumstances pertaining to the situation and conduct of the parties, which are found by the court to have been proven under the allegations of these defenses. The court finds that the agreement made on February 1st and 3d, contemplated that the shipment, of which the coke in question was a part, would arrive at New Haven between February 20th and February 25th. A strike among miners of anthracite coal, which existed when the agreement was made, was settled on February 12th, resulting in a sharp decline in the price of coke. The ship carrying the coke did not arrive at New Haven until March 8th. Commencing as early as March 3d the defendant's manager sought a modification of the agreement because of the delay in delivery and its consequences, also claiming that it was not bound because of the statute of frauds since no written memorandum of the agreement was signed by the defendant. These efforts by the defendant, through negotiations between the parties, finally culminated, on March 17th, in the written contract of that date. It thus appears that the desirability and advantage of the first bargain to the defendant had been impaired or destroyed by unexpected circumstances—the delay in delivery and the settlement of the coal strike—and the plaintiff was confronted with an at least possible repudiation of the contract or other consequences of delayed delivery, and a threatened resort to the statute of frauds as a legal obstacle to the enforcement of the contract. It would be natural and probable that, in such circumstances, the parties would

agree upon a new arrangement by which the first contract, which unforeseen events had rendered of doubtful value to either, should give way to a new agreement providing for a price and other conditions that would enable both parties to save their interests or at least mitigate the consequences which would otherwise accrue. *Connelly* v. *Devoe*, 37 Conn. 570, 576; *Goebel* v. *Linn*, 47 Mich. 489, 493, 11 N. W. 284. On the other hand, it seems illogical and extremely doubtful that the defendant would knowingly enter into such an agreement, involving a sacrifice of the defenses which it claimed to possess as against the first contract, upon any other basis than a completely substituted contract, terminating its liability under the former agreement. There is nothing in the second contract or the attendant circumstances to fairly apprise the defendant of any retention by the plaintiff of surviving rights under the former one, nor anything to lend tangible or plausible color to such a claim.

The further allegations of the third defense and the facts found to have been proven thereunder are also consistent with and tend to confirm the defendant's claim of substitute contract.

The legal presumptions and rules applicable to such a situation as is here presented also lead to the same conclusion. As a general rule, when the new contract is in regard to the same matter and has the same scope as the earlier contract and the terms of the two are inconsistent either in whole or in a substantial part, so that they cannot subsist together, the new contract abrogates the earlier one *in toto* and takes its place, even though there is no express agreement that the new contract shall have that effect. 3 Elliott on Contracts, § 1865; 3 Williston on Contracts, § 1826, p. 3145; 4 Page on Contracts, §§ 2494, 2495; 13 Corpus Juris, p. 603; 6 Ruling Case Law, p. 923; 22 Amer. & Eng.

Anno. Cas. p. 1258. Of the numerous cases supporting this proposition, *Goebel* v. *Linn, supra; United States ex rel. International Contracting Co.* v. *Lamont,* 155 U. S. 303, 15 Sup. Ct. 97, and *Rogers* v. *Rogers,* 139 Mass. 440, 1 N.E. 122, especially resemble the instant case in salient features.

The Connecticut cases cited by the plaintiff as instances of unexecuted accord are not inconsistent with this rule, but, instead, illustrate its recognized limitations. In *Goodrich* v. *Stanley,* 24 Conn. 613, 620, 621, the agreement was found to have been that the payee of a note would accept the labor of the maker, and not merely his promise to render it, in satisfaction of the note, and it was held, therefore, that until the labor had been performed the agreement was only an unexecuted accord, constituting no satisfaction of the note. But the court also observed, "we do not perceive why, on principle, an acceptance of a new and valid promise, which can be enforced in substitution of an existing claim, should not . . . be as effectual a satisfaction and extinguishment of such claim as the acceptance of any other thing." In *Scutt's Appeal,* 43 Conn. 108, the original agreement was that if Scutt would convey his homestead to Olmstead, he would immediately convey it to Scutt's wife, who was Olmstead's daughter, and would build a house thereon worth $1,000. The subsequent agreement, held to be an accord, related only to the substitution of a conveyance of bank stock for the building of the house, hence did not cover the entire subject-matter of the original contract. In *Francis* v. *Deming,* 59 Conn. 108, 21 Atl. 1006, the agreement alleged was that plaintiffs would discharge their judgment if the defendants should, within the time limited, pay the stated sum—less than the amount of the judgment; it was not claimed that this agreement was accepted by the plaintiffs in discharge of the judgment;

Riverside Coal Co. *v.* American Coal Co.

it was a mere promise to discharge if payment was so made, and until then an unexecuted accord. In *Lovell v. Hammond Co.,* 66 Conn. 500, 34 Atl. 511, the defendant, creditor, merely agreed to accept a three-months note, with suitable indorsement, in satisfaction of his claim.

The situation here is much more analogous to that alleged in *Blakeslee* v. *Water Commissioners,* 106 Conn. 642, 139 Atl. 106, and that held in *Connelly* v. *Devoe,* 37 Conn. 570, to have been a substitute agreement.

The facts which the plaintiff seeks to have added to the finding, and which are not already found and on the evidence of record might properly have been inserted, are details of circumstances attending the drafting of the agreement on March 17th; that, in addition to the invoice of March 27th, found by the trial court, the plaintiff, on March 8th, sent defendant a bill for fifteen hundred tons of coke at $12 per ton, and on March 19th mailed an invoice for 1,499.7 tons at $12 per ton, with an accompanying credit memorandum for $5.50 per ton; that the defendant obtained information from the Hartford freight agent, only, as to the accuracy of the weight shown by its freight bills, which totaled 9,900 pounds less than the weight taken at New Haven and at which it was billed to defendant. None of these facts would affect, to the plaintiff's advantage, the construction which we put upon the second contract, and so, as the case stands, there is no occasion to add them to the finding. *Beach* v. *First National Bank, ante,* pp. 1, 4, 138 Atl. 905. If the transaction had been, as the plaintiff contended, an agreement for accord and satisfaction, some of these facts would have been relevant to and perhaps helpful in determining the further question, which would then have been presented, whether, under all the circumstances, the attempted payment by the defendant, on April 9th, of

the amount due on the basis of the weights given by the railroad office at Hartford, after deducting the $2,000 payment of March 17th and one half of the demurrage as then computed, constituted an adequate performance and satisfaction of the accord. The provision, "payable on presentation of invoice," might well be held to contemplate an invoice unobjectionable in form and correct in amount, and payment in full only when bona fide differences are adjusted and such credits or reductions as are involved are or may be ascertained. It would seem, too, that the invoices presented in the present case, referring, as they did, to the price provided by the first contract, with a reduction by credit memorandum to the price stipulated in the new agreement, instead of being based upon the latter price alone, and involving a discrepancy in weights, even though relatively small, can hardly be said to have afforded the defendant no ground for inquiry and objection; also that the defendant's election to ascertain the amount of demurrage, for all of which it was primarily liable to the railroad company, and to deduct the plaintiff's share from the amount of its bill, instead of relying upon the plaintiff to pay its share direct, was not inadmissible under the contract or unreasonable.

The demurrers were properly overruled and the only cause of action available to the plaintiff was that set up in the second count of its complaint, upon which judgment, correct in amount, was rendered.

There is no error.

In this opinion the other judges concurred.