[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The plaintiff, Union Trust Company, loaned the defendants, Lionel S. Jackson, Sr. and Patricia J. Jackson, the sum of four hundred fifty-two thousand ($452,000) dollars, for which the defendants executed a note dated April 18, 1989. The note is attached to the complaint as Exhibit A and is incorporated therein by reference. Pursuant to the terms of the note, the defendants were obligated to pay interest on the unpaid principal balance monthly, on the first day of each month beginning June 1, 1989, and to pay back the principal amount upon demand. The defendants also agreed to provide additional collateral to secure the note upon a request by plaintiff to do so.
The complaint alleges that plaintiff made repeated demands for additional collateral, and that the defendants failed to comply. Plaintiff then declared the entire balance due and payable. This action for breach of contract and unjust enrichment was commenced after defendants allegedly defaulted on their obligations under the note. Plaintiff seeks the principal balance, interest, and costs including attorneys fees.
In their answer dated March 20, 1992, the defendants admit that they signed the note and received the aforementioned loan from the plaintiff. They assert five special defenses to plaintiff's claim, sounding in modification, novation, waiver, CT Page 6649 accord and satisfaction and bad faith. By way of setoff and counterclaim, defendants allege a violation of the Connecticut Unfair Trade Practices Act ("CUTPA").
Plaintiff now moves to strike the special defenses and counterclaim for legal insufficiency, and has submitted a memorandum of law in support thereof. Defendants have submitted a memorandum in opposition.
The legal sufficiency of a special defense or counterclaim may be challenged by a motion to strike. Practice Book 152. See also Krasnow v. Christensen, 40 Conn. Sup. 287, 288,492 A.2d 850 (1985, Burns, J.) and Fairfield Lease Corp. v. Romano's Auto Service, 4 Conn. App. 495, 496, 495 A.2d 286 (1985). "For the purpose of ruling upon a motion to strike, the facts alleged in [the pleading], though not the legal conclusions it may contain, are deemed to be admitted." Maloney v. Conroy, 208 Conn. 392,394, 545 A.2d 1059 (1988). Thus, "[i]n determining whether a motion to strike should be granted, the sole question is whether, if the facts alleged are taken to be true, the allegations provide a cause of action or a defense." County Federal Savings and Loan Assn. v. Eastern Associates, 3 Conn. App. 582,585-86, 491 A.2d 401 (1985). The facts must be construed in the light most favorable to the nonmoving party. Rowe v. Godou, 209 Conn. 273, 278, 550 A.2d 1073 (1988).
Defendants' first special defense alleges that the parties entered into a "side agreement" in June, 1991 in which the defendants agreed to make payments of $5,000 a month on principal and to keep the interest current. They further allege that said payments were made in June 1991 and July 1991, and the plaintiff accepted the payments. Defendants assert that as a consequence of this side agreement, the original note or loan obligation was modified or terminated, and is no longer legally enforceable.
Plaintiff moves to strike the first special defense on the grounds that the defendants have not alleged mutual assent to the new meanings and conditions of the side agreement, nor have they alleged new consideration, both of which are required for a modification of an earlier contract. Parties may agree to substitute or materially change a contract, but "mutual assent to its meaning and conditions is necessary." Hess v. Dumouchel Paper Co., 154 Conn. 343, 347,225 A.2d 797 (1966). See also First Hartford Realty Corp. v. Ellis, 181 Conn. 25, 33, 434 A.2d 314 (1980). The parties "must assent to the same thing in the same sense if they are to vary the contract in any way after it has been executed." Hess, supra. (Citations omitted) CT Page 6650
A modification of an agreement also requires valid consideration. State National Bank v. Dick, 164 Conn. 523,529, 325 A.2d 235 (1973). In the absence of new consideration, a subsequent agreement is not a valid, binding contract. Brian Construction and Development Co. v. Brighenti, 176 Conn. 162, 166, 405 A.2d 72 (1978). To constitute new consideration, "a party [must] do, or promise to do, something further than, or different from, that which he is already bound to do." Thermoglaze, Inc. v. Morningside Gardens Co., 23 Conn. App. 741, 745, 583 A.2d 1331, cert. denied, 217 Conn. 811 (1991). See also State National Bank, supra.
For example, State National Bank holds that absent proof that the debtors ever paid interest greater than that which they had from the beginning agreed to pay, or that the debtors had extended additional collateral to the bank, the purported oral agreement to extend the loan was not supported by new consideration. State National Bank, supra, 529-30.
The defendants in their first special defense allege only that there was a side agreement between the parties concerning when and how much the defendants were to pay the plaintiff, and that the plaintiff accepted two such payments. No allegations are set forth that the parties intended the side agreement to substitute for or modify the original note, or that the parties mutually agreed that the side agreement was a substitution for or a modification of the original loan obligation.
Additionally, the special defense contains no allegations of new consideration tendered in exchange for the plaintiff's promise not to enforce the terms of the original note. The defendants under the alleged side agreement only promise to pay amounts due under the original contract. Under the law set forth in the abovementioned cases, a promise to do that which one is already bound to do does not constitute valid consideration for a modification of an agreement. For the foregoing reasons, this court finds that defendants' first special defense should be stricken.
The second special defense alleges a novation based on the same alleged side agreement. Defendants state that in accordance with the novation, they made certain payments which were accepted, and thus no default occurred. Plaintiff argues in its memorandum that defendants have failed to allege mutual assent to a transfer of obligations under the note to a third party, and have not alleged valuable consideration. CT Page 6651
The broader definition of novation is the "substitution of a new contract for the old agreement." 15 Williston on Contracts 2d 1865 (3d ed.). It is more usually applied to mean a new contract where a new party has been introduced. Id.; Riverside Coal Co. v. American Coal Co., 107 Conn. 40, 44-45, 139 A. 276 (1927). See also Restatement (Second) of Contracts 280. If the new contract is between the same parties, the transaction is referred to as a substitute contract. Riverside Coal, supra. In both instances, the new agreement supersedes and discharges the prior agreement. Id.; Restatement, supra, 280 comment b; Williston, supra.
Defendants' second defense refers to the side agreement as a novation, but makes no mention of a new party. In either case, whether the court analyzes the agreement as a novation or a substitute contract, the second defense is stricken. In order to have a legally enforceable substitute agreement, the parties must intend that the new agreement "discharge the prior contract and all claims and demands growing out of it." Id., 45. Additionally, the substituted contract must be supported by consideration or it is ineffective. Restatement, supra, 279 comment b. See Vachon v. Tomascak, 155 Conn. 52, 56, 230 A.2d 5
(1967) (parties may replace contract by substitute contract if sufficient consideration).
Since the defendants have not plead the requisite intent by the parties to discharge the original loan obligation, nor have they plead consideration (see discussion supra regarding first special defense), it is again this court's finding that the second special defense should be stricken.
In the third special defense, the defendants contend that the plaintiff waived its rights under the original loan agreement when it agreed to the new terms of the purported side agreement or novation and accepted payments pursuant to same. Plaintiff argues that defendants have failed to allege a valid modification or novation, or that the bank intended to relinquish its rights.
"Waiver presupposes a full knowledge of an existing right or privilege and something done designedly or knowingly to relinquish it. 28 Am.Jur.2d, Estoppel and Waiver, 158." Reinke v. Greenwich Hospital Assn., 175 Conn. 24, 27,392 A.2d 966 (1978). "To constitute waiver there must be both knowledge of the existence of the right and intention to relinquish it." Novella v. Hartford Accident and Indemnity Co., 163 Conn. 552,562, 316 A.2d 394 (1972) (quotations and citations omitted; original emphasis). CT Page 6652
In this case, because the defendants have not plead an intentional relinquishment of a known right, their third special defense fails and is stricken. This court further finds that this defense is stricken because the defendants have not sufficiently plead a new agreement between the parties as discussed above.
By way of fourth special defense, the defendants allege that plaintiff accepted payments made by defendants pursuant to a purported side agreement or novation, and said payments constitute an accord and satisfaction. Plaintiff moves to strike on the grounds that any alleged performance by the defendants pursuant to a modification or novation which has not been sufficiently plead is not a valid defense.
"An accord is a contract between creditor and debtor for the settlement of a claim by some performance other than that which is due. Satisfaction takes place when the accord is executed." W. H. McCune, Inc. v. Revzon, 151 Conn. 107, 109,193 A.2d 601 (1963); Gillis v. Gillis, 21 Conn. App. 549, 552,575 A.2d 230 (1990). "The defense of accord requires that the defendant allege and prove `a new agreement with a new consideration.'" Gillis, supra, 552, quoting Crucible Steel Co. v. Premier Mfg. Co., 94 Conn. 652, 656, 110 A. 52 (1920). An accord also requires mutual assent, i.e., a meeting of the minds. Id.
Once again, this special defense is stricken as defendants have not alleged a new agreement with new consideration (see discussion, supra, respecting first and second special defense), nor have they alleged that the parties mutually agreed that the payments tendered were in satisfaction of the entire loan obligation.
The fifth special defense alleges that after having accepted the benefits of the side agreement or novation, the plaintiff attempted to repudiate the terms and provisions of said agreement thereby acting in bad faith. "Every contract or duty [governed by the Uniform Commercial Code] imposes an obligation of good faith in its performance or enforcement." General Statutes 42a-1-203. See also Restatement (Second), Contracts, 205. In Connecticut "[t]he implied covenant of good faith and fair dealing has been applied . . . in a variety of contractual relationships;" Magnan v. Anaconda Industries, Inc., 193 Conn. 558, 566, 479 A.2d 781 (1984); including lender-borrower relationships; Economic Development Associates v. Cititrust, 3 Conn. L. Rptr. 403 (March 27, 1991, Dranginis, J.); Sorillo v. Strother, 2 CSCR 1095 (October 1, 1987, Leuba, J.). "In order for the defendant[s] to sufficiently allege a violation of good faith, [they] must allege contract provisions CT Page 6653 that the plaintiff breached." Winsted Savings Bank v. Salmon Brook Properties, Inc., 7 CSCR 91, 92 (November 26, 1991, Hennessey, J.).
Plaintiff argues that the defendants have not sufficiently alleged a modification or novation, and, thus, there is not contractual duty that plaintiff could have breached. This court finds this argument persuasive. Additionally, the defendants have not alleged which contract provisions were breached. See Winsted Savings Bank, supra.
Even if the court were to determine that defendants' allegations of a new agreement are sufficient for purposes of this special defense, the allegations respecting bad faith are not. Defendants state that the plaintiff "attempted to repudiate the terms and provisions of the side agreement or novation and therefore have acted in bad faith." These allegations are conclusory and do not contain the material facts necessary to plead a special defense. See Practice Book 108. Thus, for the foregoing reasons, the defendants' fifth special defense is stricken.
Defendants claim by way of setoff and counterclaim a Connecticut Unfair Trade Practices Act ("CUTPA") violation. Plaintiff first argues that CUTPA does not apply to banks, and for this reason defendants' claim should be stricken. There is a conflict of authority in the trial courts as to whether CUTPA applies to banks, which conflict has not yet been resolved by an appellate court. Andrus v. Maloney,5 CTLR 313, 314 (December 9, 1991, Maiocco, J.). "The argument against CUTPA applying to banks is essentially that the FTCA [Federal Trade Commission Act], which is the basis for CUTPA, explicitly exempted banks from its application." Id. See Bristol Savings Bank v. Sattler, 4 CSCR 351 (March 29, 1989, Aronson, J.); People's Bank v. Horesco, 1 CSCR 62 (January 22, 1986, Jacobson, J.), aff'd on other grounds, 205 Conn. 319,533 A.2d 850 (1987). Some cases hold that CUTPA does not apply to banks where the transactions involved are not consumer-oriented. See American National Bank v. Ginsburg,6 CTLR 80 (February 24, 1992, Curran, J.); Connecticut National Bank v. Hartling, 4 CTLR 451 (August 1, 1991, Mihalakos, J.); Everest Inc. v. Advest Bank, 4 CTLR 423 (July 30, 1991, Wagner, J.). See also Economic Development Assoc. v. Cititrust, supra (whether CUTPA applies to banks depends on type of activities in which bank is allegedly involved; when bank is engaged in consumer-oriented activities, CUTPA should apply).
The majority of courts, however, have held that CUTPA does apply to banks. See Faitella v. North Atlantic Planning CT Page 6654 Corp, 5 CTLR 431 (January 6, 1992, Byrne, J.) (courts should not enlarge legislative exemption); Lafayette Bank Trust Co. v. Jarvis, 5 CTLR 49 (September 27, 1991, Spear, J.) (breach of forebearance agreement not shown to be subject of pervasive state or federal law or regulations); Eylward v. Bank of Boston Connecticut, 4 CTLR 504 (August 6, 1991, Burns, J.) (no explicit exemption); Connecticut National Bank v. Gager, 4 CTLR 11 (May 2, 1991, Leuba, J.) (no pervasive regulation; not specifically exempted); Andrus v. North American Bank, 6 CSCR 458 (April 3, 1991, Fuller, J.) (fact that banks may be regulated by one set of statutes does not preclude regulation or liability under another); Westledge Real Estate, Inc. v. Suffield Bank, 3 CTLR 170 (January 24, 1991, Clark, J.) (exempting banks may be improper expansion of CUTPA); Bristol Savings Bank v. Szydlowski, 3 CTLR 113
(January 7, 1991, O'Connor, J.) (CUTPA is remedial in nature); Andrews v. Connecticut Bank Trust Co., 1 CSCR 795
(September 22, 1986, T. Sullivan, J.) (CUTPA is to be broadly interpreted); Ebersol McCormick v. Torrington Savings Bank,4 CSCR 499 (May 26, 1989, Pickett, J.) (no explicit exemption for banks); Weisman v. Westport Bank Trust, 1 CSCR 283
(April 30, 1986, Zoarski, J.) (acts not declared unlawful by FTC or federal courts can be prohibited by CUTPA).
If the court determines that CUTPA does not apply to banks, the plaintiff's motion to strike the counterclaim is granted. If the court decides that CUTPA does apply to banks, then the next issue to be resolved is whether defendants have alleged a CUTPA violation. Plaintiff contends they have not and argues that even were CUTPA to apply, the defendants have failed to allege any facts to support their claim that plaintiff's exercise of its legal rights under the loan obligation is a deceptive or unfair trade practice. This court agrees.
CUTPA is set forth in General Statutes 42-110a et seq. Section 42-110b(a) provides that "[n]o person shall engage in unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." The following criteria should be applied to determine if a practice violates CUTPA:
 "(1) [W]hether the practice, without necessarily having been previously considered unlawful, offends public policy as it has been established by statutes, the common law, or otherwise-whether, in other words, it is within at least the penumbra of some common law, statutory, or other established concept of unfairness; (2) CT Page 6655 whether it is immoral, unethical, oppressive, or unscrupulous; (3) whether it causes substantial injury to consumers [(competitors or other businessmen)]." Conaway v. Prestia, [191 Conn. 484, 492-93, 464 A.2d 847 (1983)], quoting FTC v. Sperry Hutchingson Co., 405 U.S. 233, 244-45 n. 5, 92 S.Ct. 898, 31 L.Ed.2d 170 (1972). . . .
McLaughlin Ford, Inc. v. Ford Motor Co., 192 Conn. 558, 568,473 A.2d 1185 (1984). See also Daddona v. Liberty Mobile Home Sales, Inc., 209 Conn. 243, 254, 550 A.2d 1061 (1988). The injury required by the third prong of the test must be substantial, must not be outweighed by countervailing benefits to consumers or competition, and "must be an injury that consumers themselves could not reasonably have avoided." A-G Foods, Inc. v. Pepperidge Farm Inc., 216 Conn. 200, 216,579 A.2d 69 (1990). (Citations omitted.)
The defendants' counterclaim alleges that "[f]or reasons that are unknown to the defendants, the plaintiff, after having accepted the benefits of said side agreement or novation, attempted to repudiate the side agreement or novation and have acted in bad faith," and "[t]he conduct of the plaintiff in attempting to repudiate . . . constitutes unfair or deceptive acts or practices . . . in violation of [CUTPA]."
In the first instance that defendants' allegation of bad faith acts by the plaintiff is merely a conclusion with no supporting factual allegations. See discussion, supra. It is further noted that defendants have not sufficiently plead any acts or practices on the part of plaintiff that offends public policy, or that are immoral, unethical, oppressive or unscrupulous. McLaughlin Ford, supra. Nor have they plead a substantial injury that they could not reasonably have avoided. A-G Foods, Inc., supra. "`A simple breach of contract, even if intentional, does not amount to a violation of the Act; a [claimant] must show substantial aggravating circumstances attending the breach to recover under the Act. . . .' Bartolomeo v. S. B. Thomas, Inc., 889 F.2d 530, 535 (4th Cir. 1989); United Roasters, Inc. v. Colgate-Palmolive Co., 649 F.2d 985, 992 (4th Cir. 1981); D'Ercole Sales, Inc. v. Fruehauf Corporation,206 N.J. Super. 11, 25, 502 A.2d 990 (1985)." Emlee Equipment Leasing Corp. v. Waterbury Transmission, Inc., 41 Conn. Sup. 575,580, 595 A.2d 951 (1991, Blue, J.) Thus, the court finds that defendants' setoff and counterclaim are stricken for legal insufficiency.
KATZ, J. CT Page 6656