[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION ON MOTION TO STRIKE SPECIAL DEFENSES AND COUNTERCLAIM
The plaintiff, Siebe Environmental Controls (SEC), filed a four count third amended complaint on April 15, 1999, against several defendants, with the first count (breach of contract) and second count (unjust enrichment) directed against the defendant, Johnson-Goodyer, Inc. (JGI). On March 13, 2000, JGI filed an amended answer, special defenses and fourteen count counterclaim against SEC. Presently before the court is SEC's motion to strike JGI's special defenses and counterclaim.
SEC moves to strike counts one (breach of contract), two (breach of the implied covenant of good faith and fair dealing), three (violation of the Franchise Act, General Statutes § 42-133f), four (breach of the covenant of good faith and fair dealing), five (intentional interference with contractual/business relations), six (negligent interference with CT Page 12391 contractual/business relations) and seven (violation of CUTPA, General Statutes § 42-110a et seq.) of JGI's counterclaim. Counts one through seven relate to a contract into which JGI alleges the parties entered in April 1996 (the April 1996 Agreement). SEC moves to strike these counts, arguing that the parties entered into a subsequent contract in August 1996 (the August 1996 Agreement), which constitutes a novation effectively extinguishing the April 1996 Agreement.
"Novation may be broadly defined as a substitution of a new contract or obligation for an old one which is thereby extinguished." (Internal quotation marks omitted.) Bushnell Plaza Development Corp. v. Fazzano,38 Conn. Sup. 683, 688, 460 A.2d 1311 (1983) (Appellate Session). The term "novation" is "usually used with reference to instances in which a new party is introduced into the new contract. Riverside Coal Co. v.American Coal Co., 107 Conn. 40, 44, 139 A. 276 (1927). If the new contract is between the same parties, however, the term "substitute contract" is used. Id., 44-45. In order to have an effective substitute contract, two requirements must be met. First, the parties must intend that the new contract "discharge the prior contract and all claims and demands growing out of it"; id., 45; and, second, the substitute contract must be supported by consideration; Vachon v. Tomascak, 155 Conn. 52,56, 230 A.2d 5 (1967). See also Union Trust Co. v. Jackson, Superior Court, judicial district of Fairfield at Bridgeport, Docket No. 286938 (July 14, 1992, Katz, J.).
It is the opinion of the Court that SEC's motion to strike is not the proper vehicle for determining whether the August 1996 Agreement constituted a novation. Novation is properly pleaded as a special defense. See, e.g., Union Trust Co. v. Jackson, 42 Conn. App. 413, 416,679 A.2d 421 (1996); Ruwet-Sibley Equipment Corp. v. Stebbins,15 Conn. App. 21, 24, 542 A.2d 1171, cert. dismissed, 209 Conn. 806,548 A.2d 437 (1988). Moreover, whether a novation has occurred depends on the resolution of factual questions properly left to the trier of fact. See Mace v. Conde Nast Publications, Inc., 155 Conn. 680, 688-89,237 A.2d 360 (1967); Vumbacco v. Papallo, 102 Conn. 562, 564, 129 A. 525
(1925); Spicer v. Spicer, 33 Conn. App. 152, 158-59, 634 A.2d 902
(1993), cert. denied, 228 Conn. 920, 636 A.2d 850 (1994). Further, that the parties intended the August 1996 Agreement to be a substitute contract is a fact outside the pleadings as the August 1996 Agreement is nowhere pleaded in counts one through seven of JGI's counterclaim. "A `speaking' motion to strike (one imparting facts outside the pleadings) will not be granted." Doe v. Marselle, 38 Conn. App. 360, 364, 660 A.2d 871
(1995), rev'd on other grounds, 236 Conn. 845, 675 A.2d 835 (1996); see also Cavallo v. Derby Savings Bank, 188 Conn. 281, 285-86, 449 A.2d 986
(1982). Therefore, SEC's motion to strike counts one through seven on this ground is denied. CT Page 12392
 II
SEC moves to strike counts one and eight of JGI's counterclaim. First, SEC reiterates its argument that the April 1996 Agreement alleged in count one was abrogated by the August 1996 Agreement. As discussed above, however, whether the April 1996 Agreement has been abrogated by reason of a novation is not properly raised on this motion to strike, as discussed above.
SEC further argues that both counts one and eight are legally insufficient in that the language of the parties' agreement demonstrates that SEC did not breach the contract. As a general matter, "[i]n deciding upon a motion to strike . . . a trial court must take the facts to be those alleged in the [pleadings]. . . ." (Citations omitted.) LiljedahlBros., Inc. v. Grigsby, 215 Conn. 345, 348, 576 A.2d 149 (1990). In moving to strike these counts, SEC is really arguing the merits of the alleged breach by disputing the allegations that it breached. This is improper on a motion to strike where the court must take the allegations in the counterclaim as true. Thus, the motion to strike counts one and eight is denied.
 III
SEC moves to strike counts two, four, nine and eleven of JGI's counterclaim, wherein JGI alleges that SEC breached the implied covenant of good faith and fair dealing. SEC argues, among other things, that JGI has failed to allege any conduct on the part of SEC that constitutes bad faith. Because the motion to strike may be granted on this ground, the court need not address SEC's other arguments raised.
"Every contract carries an implied covenant of good faith and fair dealing requiring that neither party do anything that will injure the right of the other to receive the benefits of the agreement." Habetz v.Condon, 224 Conn. 231, 238, 618 A.2d 501 (1992). "Essentially it is a rule of construction designed to fulfill the reasonable expectations of the contracting parties as they presumably intended." Magnan v. AnacondaIndustries, Inc., 193 Conn. 558, 567, 479 A.2d 781 (1984). "Bad faith in general implies both actual or constructive fraud, or a design to mislead or deceive another, or a neglect or refusal to fulfill some duty or some contractual obligation, not prompted by an honest mistake as to one's rights or duties, but by some interested or sinister motive." (Internal quotation marks omitted.) Habetz v. Condon, supra, 237. In other words, "[b]ad faith means more than mere negligence; it involves a dishonest purpose." Id.
CT Page 12393 In the present case, nowhere in JGI's counterclaim is it alleged that SEC acted with bad faith or an improper motive or purpose in breaching the contract at issue. Therefore, SEC's motion to strike counts two, four, nine and eleven is granted.
 IV
SEC moves to strike counts three and ten of JGI's counterclaim. SEC argues that these counts merely contain conclusory allegations that the Franchise Act has been violated without any facts as would support such a claim.
"A motion to strike is properly granted if the [pleading] alleges mere conclusions of law that are unsupported by the facts alleged." NovametrixMedical Systems, Inc. v. BOC Group, Inc., 224 Conn. 210, 215, 618 A.2d 25
(1991). General Statutes § 42-133e (b) defines a franchise as "an oral or written agreement or arrangement in which (1) a franchisee is granted the right to engage in the business of offering, selling or distributing goods or services under a marketing plan or system prescribed in substantial part by a franchisor, provided nothing contained herein shall be deemed to create a franchisor-franchisee relationship between the grantor and grantee of a lease, license or concession to sell goods or services upon or appurtenant to the premises of the grantor, which premises are occupied by the grantor primarily for its own independent merchandising activities; and (2) the operation of the franchisee's business pursuant to such plan or system is substantially associated with the franchisor's trademark, service mark, trade name, logotype, advertising or other commercial symbol designating the franchisor or its affiliate, and includes any agreement between a manufacturer, refiner or producer and a retailer, or between a distributor, wholesaler or jobber and a retailer."
In analyzing the Franchise Act, the Connecticut Supreme Court noted that the relationship between the parties "is not governed solely by the parties' main written agreement." Hartford Electric Supply Co. v.Allen-Bradley Co., 250 Conn. 334, 348, 736 A.2d 824 (1999). "Rather its legal significance is fixed by reality, not by what defendant[s] or plaintiffs call it, though descriptive language may be relevant." (Internal quotation marks omitted.) Id. The court further indicated that "[t]here is no precise formula as to how many or which factors create the level of control indicative of a franchise, pursuant to the franchise act." Id., 350. Some factors to consider, however, are "whether the franchisor had control over: (1) hours and days of operation; (2) advertising; (3) lighting; (4) employee uniforms; (5) prices; (6) trading stamps; (7) hiring; (8) sales quotas; and (9) management training." Id. The court also looked at whether "the franchisor provided the franchisee CT Page 12394 with financial support, audited its books, or inspected its premises." Id.
In the present case, JGI alleges conclusively in counts three and ten that its agreement with SEC constitutes a franchise agreement. JGI fails to plead, however, any facts indicative of the presence of any of the above enumerated factors that would support its allegation of a franchise agreement. Thus, SEC's motion to strike counts three and ten is granted.
 V
SEC moves to strike counts five, six, twelve and thirteen of JGI's counterclaim, wherein intentional or negligent interference with contractual/business relations is alleged. SEC argues that JGI fails to allege any predicate facts in support of such claims.
"In Connecticut there are two actions for tortious interference with contract, negligent interference with contractual relations and intentional interference with business relations." Gillette v. Town ofNew Milford, Superior Court, judicial district of Litchfield, Docket No. 54791 (September 16, 1992, Pickett, J.) (7 C.S.C.R. 1248). "A claim for tortious interference with contractual relations requires the plaintiff to establish (1) the existence of a contractual or beneficial relationship, (2) the defendants' knowledge of that relationship, (3) the defendants' intent to interfere with the relationship, (4) the interference was tortious, and (5) a loss suffered by the plaintiff that was caused by the defendant's tortious conduct." Collum v. Chapin,40 Conn. App. 449, 452, 671 A.2d 1329 (1996). Further, "[am action for intentional interference with business relations . . . requires the plaintiff to plead and prove at least some improper motive or improper means." (Internal quotation marks omitted.) Daley v. Aetna Life Casualty Co., 249 Conn. 766, 806, 734 A.2d 112 (1999).
In the present case, JGI conclusively recites the essential elements for tortious interference with contractual relations. The allegations, however, are totally lacking in the predicate facts necessary to support these elements. See Tapia v. Sikorski Aircraft, Superior Court, judicial district of Fairfield at Bridgeport, Docket No. 327761 (December 10, 1997, Mottolese, J.) (granting motion to strike where allegations merely conclusory recitation of essential elements of cause of action). SEC's motion to strike counts five, six, twelve and thirteen is therefore granted.
 VI
SEC moves to strike counts seven and fourteen, wherein JGI alleges that CT Page 12395 SEC committed unfair trade practices in violation of CUTPA. Specifically, count seven incorporates the allegations of counts one through six, and count fourteen incorporates the allegations of counts eight through thirteen. SEC argues that JGI has failed to allege sufficient facts to support a CUTPA violation.
General Statutes § 42-100b (a) provides that "[n]o person shall engage in unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." The Connecticut Supreme Court has stated that "[i]t is well settled that in determining whether a practice violates CUTPA we have adopted the criteria set out in the "cigarette rule' by the federal trade commission for determining when a practice is unfair: (1) [W]hether the practice, without necessarily having been previously considered unlawful, offends public policy as it has been established by statutes, the common law, or otherwise — in other words, it is within at least the penumbra of some common law, statutory, or other established concept of unfairness; (2) whether it is immoral, unethical, oppressive, or unscrupulous; (3) whether it causes substantial injury to consumers, [competitors or other business persons]. . . . All three criteria do not need to be satisfied to support a finding of unfairness. A practice may be unfair because of the degree to which it meets one of the criteria or because to a lesser extent it meets all three." (Internal quotation marks omitted.) Willow SpringsCondominium Assn., Inc. v. Seventh BRT Development Corp., 245 Conn. 1,43, 717 A.2d 77 (1998). Finally, "[a] simple breach of contract, even if intentional, does not amount to a violation of the Act; a [claimant] must show substantial aggravating circumstances attending the breach to recover under the Act. . . ." (Internal quotation marks omitted.) EmleeEquipment Leasing Corp. v. Waterbury Transmission, Inc., 41 Conn. Sup. 575,580, 595 A.2d 951 (1991).
As discussed above, counts two, three, four, five, six, nine, ten, eleven, twelve and thirteen have been stricken on the ground that they fail to allege, or they do so conclusorily, facts in support of the causes of actions claimed therein. Nowhere in these counts does JGI allege facts satisfying any of the criteria of the cigarette rule. Further, the allegations in counts one and eight, alleging breach of contract, are insufficient to support a cause of action for CUTPA. As proscribed by Emlee Equipment Leasing Corp. v. Waterbury Transmission,Inc., supra, 41 Conn. Sup. 580, a simple breach of contract, in the absence of aggravating factors, is insufficient to support a CUTPA claim.
JGI's primary argument in opposition to striking its CUTPA claims is that a violation of the Franchise Act has been held also to violate CUTPA. See Hartford Electric Supply Co. v. Allen-Bradley Co., supra, CT Page 12396250 Conn. 367-70. This argument fails, however, in that, as previously determined, JGI has failed to allege sufficiently a violation of the Franchise Act.
Because all of the aforementioned counts contain no facts that sufficiently support a CUTPA violation, SEC's motion to strike counts seven and fourteen is granted.
 VII
JGI's five special defenses are setoff, recoupment, a claim that SEC "breached its agreement with the Defendant and as a result of said breach, is not entitled [to] pursue any remedies or claims pursuant to said agreement," unclean hands and violation of the Franchise Act. JGI proffers no facts whatsoever in support of these special defenses. "Each pleading shall contain a plain and concise statement of the material facts on which the pleader relies . . . ." Practice Book § 10-1. Accordingly, the special defenses are insufficiently pleaded, and the motion to strike them should be granted.
In summation, the plaintiff's motion to strike counts two, three, four, five, six, seven, nine, ten, eleven, twelve, thirteen and fourteen of the defendant's counterclaim is granted. In addition, the plaintiff's motion to strike the defendant's special defenses is granted. The plaintiff's motion to strike counts one and eight of the defendant's counterclaim is denied.
Hale, J.