[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
The plaintiff Leonardo Industrial Properties brought this action to recover damages due under a contract for lease. The action was originally brought in the Housing Session of Superior Court but was transferred to the regular civil docket when a jury docket claim was filed. On January 18, 2001, the parties waived the claim for a jury trial and the matter was tried to the court on January 18 and 19, 2001. Subsequently, the parties submitted post-trial briefs. CT Page 5741-ec
The court finds the following facts based on the testimony the court deems credible and the exhibits introduced into evidence:
1. On October 28, 1993, Leonardo Industrial Properties, through William Leonardo ("Leonardo"), entered into a commercial lease with Patricia Maisano ("Maisano") and Deborah A. Beichner ("Beichner") for approximately 600 square feet of space located at 3350 Whitney Avenue in Hamden, Connecticut. (Ex. 2)
2. The term of the lease was three years from December 1, 1993 to November 30, 1996. (Ex. 2)
3. The rental was to be paid monthly, in advance on the first day of each month, in the amount of $750 a month the first year and $800 a month thereafter. (Ex. 2)
4. The lease provided that snow would be removed by the landlord unless the tenant's service got there first. (Ex. 2) During the lease term, snow was removed by the landlord as provided.
5. Maisano and Beichner opened a dog grooming business at the Hamden location.
6. Some time in 1994, Maisano purchased Beichner's interest in the business and continued to operate it herself. Her business hours were on Tuesdays through Saturdays and she took Sundays and Mondays off.
7. Beginning in June 1994, Maisano was consistently late in her rental payments, even though Leonardo had reduced the monthly payment to $700 at her request. The rent for June 1994 was paid on July 13, 1994. The rent for July and August 1994 was paid on September 7, 1994, the rent for September and October 1994 was paid on October 31, 1994. The rent for November 1994 was paid on November 30, 1994. The rent for December 1994 was paid on January 10, 1995. The rent for January and February 1995 was paid on March 8, 1995. Maisano apparently did not make any rental payments from March 8, 1995 through June 21, 1995. (Ex. 4)
8. On June 17, 1995, Maisano and Leonardo entered into a written agreement to reduce the rent from $800 a month to $550 a month for the period of March 1, 1995 through December 31, 1995. They further agreed to "negotiate, in good faith, the reduction of rent for the remainder of the lease." The finally agreed that "[a]ll other terms and conditions of said lease shall remain the same." (Ex. 3) CT Page 5741-ed
9. On June 21, 1995, Maisano made a payment in the amount of $550 which was credited to the rental payment due for March 1995. Similarly, a payment in that amount made on July 5, 1995 was credited to the rental payment due for April 1995, a payment made on August 14, 1995 was credited to the rental payment due for May 1995, a payment made on September 13, 1995 was credited to the rental payment due for June 1995, a payment made on October 10, 1995 was credited to the rental payment due for July 1995, and a payment made on November 20, 1995 was credited to the rental payment due for August 1995. No further rental payments were made. (Ex. 4)
10. Maisano continued to occupy the property.
11. Sometime in the winter months of 1995-1996, the exact date unknown,[1] Leonardo was notified by another tenant that the doors to Maisano's business were wide open. He went to the premises, observed that the doors were open, the heat was on and that papers were blowing around inside the premises. He asked his brother to secure the doors so that they wouldn't be blown open by the wind and to protect the premises from being entered into.
12. A chain was wound around the door knobs in an "S" shape and a lock was placed on the chains to give the appearance that the premises were secure and to prevent vandalism. A key was needed to open the lock.
13. Maisano could have called William Leonardo, his brother, his father, his attorney or the office to get the key for the lock at any time.
14. Leonardo tried to call Maisano six or seven times after securing the premises but she never responded. His bookkeeper, Rachel DiBiase, also made phone calls to Maisano's home and business to which she did not respond.
15. On February 20, 1996, Attorney Richard Shapiro, acting on Leonardo's behalf, sent a letter to Maisano at her home advising her that the doors to the premises had been secured and that if she wanted to gain access she could call the landlord. (Ex. C)
16. Attorney John Ferranti, who represented Maisano at the time, instructed Maisano to call Leonardo to get access to the premises. He saw no reason to act as a middleman. CT Page 5741-ee
17. Following the date that the doors to the premises were secured, Maisano never contacted Leonardo Industrial Properties or anyone associated with it to gain access to the premises.
18. On February 15, 1996, a notice to quit was served on Maisano and when she failed to vacate the premises a summary process action was filed. (Ex. 5)
19. On April 23, 1996, the summary process matter was set down for trial. Attorney Ferranti was present in court with Maisano. Attorneys Shapiro and Ferranti engaged in discussions to settle the matter and a stipulated agreement was entered into by both attorneys on behalf of their clients. The stipulation provided that Maisano would be relieved of her obligations under the lease if she made a payment of $6,109.40 in full by November 23, 1996, but that if payments were not made in a timely fashion Leonardo Industrial Properties could proceed with legal action to collect any amounts outstanding under the lease. Judgment of possession was to enter on May 6, 1996. (Ex. 6)
20. On May 14, 1996, Leonardo entered into an exclusive listing agreement for the right to lease the premises with Dow Realty and authorized Dow to quote a price of $600 a month. This agreement was extended in June 1996 through the end of December 1996. (Ex. 8) The premises have not been rented to date.
21. On July 2, 1996, after engaging a sheriff to remove the remainder of Maisano's property from the premises, Leonardo gained possession of the premises.
In its substitute complaint,[2] the plaintiff Leonardo Industrial Properties has alleged, in alternative counts, that the defendant Patricia Maisano entered into a lease with it, took possession of the property, failed to pay rent and owes the plaintiff damages under the lease. The only difference between the first and second counts is in the amount of damages claimed, the first count relying on the terms of the original lease and the second count relying on the terms of the June 17, 1995 agreement. The defendant Patricia Maisano, in her amended answer dated May 8, 1998,[3] has essentially denied all the plaintiffs claims and has raised five special defenses — failure to mitigate damages, an unspecified breach of the lease, payment, breach of the lease by failing to provide snow removal services and unilateral termination of the lease by a lockout. In addition, Maisano brought a five-count counterclaim alleging breach of the lease, negligent misrepresentation, CT Page 5741-ef intentional misrepresentation, a statutory lockout[4] and a CUTPA violation.
The court concludes that the plaintiff has proven, by a fair preponderance of the evidence, that Maisano breached her lease agreement by failing to pay rent when due and that it is entitled to damages as specified below. The court further concludes that Maisano has failed to prove her special defenses and all the counts of her counterclaim.[5]
Further, Maisano offered no credible evidence to establish that she sustained any damages.
When a lessee breaches a commercial lease, the lessor may elect, as here, to terminate the tenancy and regain possession of the premises and may also sue for a breach of the lease. Rokalor v. Connecticut EatingEnterprises, 18 Conn. App. 384, 388, 558 A.2d 265 (1989). In this case, the plaintiff has proven by a fair preponderance of the evidence that Maisano breached the terms of the lease by her failure to timely pay rent, that she was served with a notice to quit and that it ultimately regained possession of the property.
In defense, Maisano claims that she was locked out by Leonardo prior to the service of the notice to quit and having thus unilaterally terminated the lease, Leonardo is not entitled to recover rent due. However, this action has been brought as a breach of the lease and even in the event of a lockout, the "plaintiff is entitled to contractual damages proximately caused by the defendant's breach, subject, of course, to the duty to mitigate damages." Ensign-Bickford Realty v. Hop Brook Corp., Superior Court, judicial district of Hartford-New Britain at New Britain Housing Session, No. CVH-5363 (Nov. 26, 1996, Beach, J.).
The evidence as to a lockout is equivocal in this case and, as a result, Maisano has failed to meet her burden of proof on this issue both as to the special defense and the counterclaim. See Stiles v. Homer,21 Conn. 507, 512 (1852). The evidence is that a chain and a lock were placed on the outside doors in order to secure the premises after the doors had been found open and that the landlord made efforts to notify Maisano so that she could gain access, but she never responded. Indeed, Maisano made no effort to enter the premises or seek aid from a court pursuant to General Statutes § 47a-43.[6] Locking premises in order to secure them is far different from, for example, changing locks and removing or destroying belongings. In the former situation, courts have concluded there has been no forcible entry and detainer, see Pearson v.Kucej, Superior Court, judicial district of New Britain, Housing Session, No. 101713 (November 17, 1999, Tanzer, J.); Willow Point Co. v.CT Page 5741-egYachting Service, Superior Court, judicial district of New London at Norwich, No. 112977 (July 1, 1998, Purtill, J.T.R.), while in the latter a violation is clear. See Freeman v. Alamo Management Co., 221 Conn. 674,684, 607 A.2d 370 (1992). This case resembles the former rather than latter.
In a suit upon a breach of a contract of lease, "the measure of damages is that the award should place the injured party in the same position as he would have been had the contract been fully performed. . . . unpaid rent, while not recoverable as such, may be used by the court in computing the losses. . . ." Rokalar, Inc. v. Connecticut EatingEnterprises, Inc., supra, 18 Conn. App. 389. In this case, however, there is a dispute as to whether the agreement entered into on June 17, 1995 amounted to a "novation" which released Maisano from all the prior obligations of the October 28, 1993 lease as of December 31, 1995. A "novation" is a "term . . ., usually used with reference to instances in which a new party is introduced into the new contract, while `substitute contract' is the designation commonly employed to cover agreements between the same parties which supersede and discharge prior contract obligations. . . . There is, however, no distinction so far as concerns the legal effect." Riverside Coal Co. v. American Coal Co., 107 Conn. 40,44-45, 139 A. 276 (1927). "Although the parties may agree to a partial novation, an essential element of any novation is the extinguishing of the original contract by substitution of a new one." Flagg EnergyDevelopment Corp. v. General Motors Corp., 244 Conn. 126, 145,709 A.2d 1075 (1998). It is only when the second agreement contains terms that are inconsistent in whole or in substantial part with the first agreement, so that the two cannot stand together, that it is deemed to substitute for the first contract. Riverside Coal Co. v. American CoalCo., supra, 107 Conn. 45, 47.
The effect of the second agreement is determined by examining its terms, which are clear. The agreement provides as follows (Ex. 3):
 The undersigned, [sic] hereby agree to reduce the rent agreed upon in a rental agreement dated October 29, 1993, regarding 3350 Whitney Avenue, Hamden, CT. from $800.00 to $550.00 per month for 10 months beginning March 1, 1995 through December 31, 1995. The undersigned further agree to negotiate, in good faith, the reduction of rent for the remainder of said lease.
 All other terms and conditions of said Lease shall CT Page 5741-eh remain the same.
There can be no question from this language that the parties did not intend for this agreement to abrogate the earlier contract and discharge their obligations under it, but rather they intended for the two agreements to operate together. The parties' failure to negotiate a further rent reduction did not terminate the original lease as of December 31, 1995, as Maisano argues.[7] Accordingly, the plaintiff is entitled to damages for the duration of the original lease term which expired in November 1996.
The plaintiff, of course, had a duty to mitigate its damages, K KRealty Associates v. Gagnon, 33 Conn. App. 815, 819, 639 A.2d 524
(1994), but the burden of proving failure to exercise reasonable care to mitigate damages is on the defendant, Lynch v. Granby Holdings, Inc.,37 Conn. App. 846, 850, 658 A.2d 592 (1995), and that burden has not been met here. The plaintiff presented unrefuted evidence that it listed the premises with a broker in May 1996 following the agreement of April 23, 1996 in settlement of the summary process action. This was a reasonable and appropriate step to mitigate the damages incurred by the defendant's breach of the lease.
The plaintiff seeks damages for unpaid rent for the months of September 1995 through November 1996, costs and attorney's fees related to the eviction.[8] The court concludes that the appropriate figure to measure the damages in this case regarding the rent likely to have been paid for the remainder of the lease term is the rental amount of $550 a month that the parties agreed to in June 1995. Thus, considering that rent was not paid from September 1995 through November 1996, which amounts to $8,250, and adding the costs and attorney's fees related to the eviction which total $1,173.40, the plaintiff has sustained damages in the amount of $9,423.40.
Accordingly, for the foregoing reasons, judgment shall enter on the second count of the substitute complaint in favor of the plaintiff (Leonardo Industrial Properties) and against the defendant (Maisano) in the amount of $9,423.40. The first count of the substitute complaint is dismissed. Judgment shall enter on all counts of the counterclaim in favor of the plaintiff counterclaim defendant (Leonardo Industrial Properties) and against the defendant-counterclaim plaintiff (Maisano).
LINDA K. LAGER, JUDGE