## RUWET-SIBLEY EQUIPMENT CORPORATION *v.* ROBERT STEBBINS
## (4693)

Spallone, O'Connell and Norcott, Js.

Argued February 2—decision released June 21, 1988

*William C. Franklin,* for the appellant (defendant).
*John L. Gerardo,* for the appellee (plaintiff).

SPALLONE, J. The defendant appeals from the judgment rendered, after a trial to the court, in favor of the plaintiff. The appeal presents the following issues for our review: (1) whether there was sufficient evidence from which the court could find that the defendant owed the plaintiff $22,965.82 under a lease agreement; (2) whether the evidence presented was sufficient to support the court's finding as to the amount of damages owed to the plaintiff for repairs made to the leased property; (3) whether the court erred in calculating the amount of damages due under the lease agreement; (4) whether the court erred in concluding that a supplemental agreement between the defendant and a third party did not constitute a novation of the original lease agreement; and (5) whether the court erred in its award of attorney's fees to the plaintiff. We find error in part.

The trial court found the following facts. On or about June 30, 1979, the plaintiff, Ruwet-Sibley Equipment Corporation, a distributor of motor vehicles, and the defendant, Robert Stebbins, doing business as F. L. Stebbins and Son, a proprietor of a refuse collection business, entered into a lease for a 1979 International Harvester truck equipped for refuse collection. The lease was for a period of sixty months and obligated the defendant to pay $1186.87 plus tax per month throughout the term of the lease.

At the end of April, 1980, the defendant sold his refuse collection business but retained the truck which he had leased from the plaintiff. Although the truck was stored on the plaintiff's premises and was no longer being used, the defendant continued to make the monthly payments called for in the lease until August of 1981.

On or about August 5, 1981, the defendant and Stanley Greenbaum, who was in the refuse collection business, met in the plaintiff's office and signed an agreement wherein the defendant agreed to turn the truck over to

Greenbaum who would thereafter make the payments due under the lease. Shortly after the agreement was made, however, Greenbaum defaulted and subsequently made no further payments under the lease. Greenbaum eventually filed for bankruptcy.

In June of 1983, the truck was returned to the premises of the plaintiff. At this time, the truck was inoperable and needed engine and body repair as well as a new set of tires. In November of 1984, the plaintiff corresponded with the defendant to inform him of the cost of the repairs made to the truck and seeking reimbursement for these expenses as well as satisfaction of the outstanding lease payments.[1] When these amounts were not forthcoming, the plaintiff soon thereafter instituted an action, in two counts, alleging unpaid rental payments in the first count, and reimbursement for repairs and replacement tires for the truck in the second. The defendant answered and, by way of special defense, claimed that the supplemental agreement between the defendant and Greenbaum excused the defendant from any liability under the lease and established Greenbaum as the sole debtor.

In addition, the defendant claimed that the plaintiff owed him, by virtue of two unrelated transactions, a balance of $20,000 on a promissory note executed by the plaintiff in May of 1984, and also the amount of $25,000 which comprised the purchase price of a front-end loader sold and delivered to the plaintiff by the defendant. The defendant originally commenced a separate action against the plaintiff, seeking payment of these amounts. Shortly before trial, however, the defendant amended his answer and incorporated these

[1] The plaintiff sought the amount of $36,009.23, representing the sum of the following: $22,965.80 for lease payments past due, $6397.87 for engine repairs, $1466.16 for new tires, $750 for body repairs, and $4395.20 in interest at the statutory rate of 10 percent.

allegations into the plaintiff's action as counterclaims, and withdrew his separate cause of action.

The case proceeded to trial on the plaintiff's two-count complaint, the defendant's special defense, which the court construed as a claim of novation, and the defendant's two counterclaims. After the conclusion of the trial, but before the court issued its memorandum of decision, the parties independently reached a settlement on the second of the defendant's counterclaims regarding the purchase price of the front-end loader, and the defendant withdrew this count on August 14, 1985.

On November 13, 1985, the trial court released its decision, expressly finding that there was no novation of the original lease agreement and rendering judgment for the plaintiff on both counts of its complaint. The court awarded the plaintiff the following damages: $22,965.82 for the arrearage under the lease, $6397.87 for engine repairs to the truck, $1466.16 for replacement tires, and $750 for body repairs to the truck. The court also awarded the plaintiff interest in the amount of $7960.53 and attorney's fees of $10,000.[2]

In addition, the court found for the defendant on the remaining count of its counterclaim and awarded the defendant $20,000, interest in the amount of $3364.38 and attorney's fees of $5000. This appeal followed.

The defendant's first two claims of error, "no matter how couched, presented or obfuscated, are merely attacks on the factual findings of the trial court. In essence, the defendant is asking us to retry these issues. We cannot. On appeal, the function of this court is limited solely to the determination of whether the deci-

---

[2] These figures reflect the changes made in the trial court's corrected memorandum of decision issued December 5, 1985.

sion of the trial court is clearly erroneous. Practice Book § 4061; *Damora* v. *Christ-Janer,* 184 Conn. 109, 113, 441 A.2d 61 (1981); *Ram Roofing & Sheet Metal Co.* v. *A.B.C. Plumbing & Heating, Inc.,* 2 Conn. App. 54, 56, 475 A.2d 341 (1984). It is the province of the trial court to 'pass upon the credibility of witnesses and the weight to be accorded the evidence.' *Edgewood Construction Co.* v. *West Haven Redevelopment Agency,* 170 Conn. 271, 272, 365 A.2d 819 (1976); *Essex Savings Bank* v. *Leeker,* 2 Conn. App. 98, 102, 476 A.2d 1071 (1984). It is not within this court's power to find facts or draw conclusions therefrom. As an appellate body, we review the factual findings of the trial court to ensure that they could have been legally, logically and reasonably found, thereby establishing that the trial court could reasonably conclude as it did. *Appliances, Inc.* v. *Yost,* 186 Conn. 673, 676–77, 443 A.2d 486 (1982); *Hallmark of Farmington* v. *Roy,* 1 Conn. App. 278, 280–81, 471 A.2d 651 (1984)." *Ernst Steel Corporation* v. *Reliance Ins. Co.,* 13 Conn. App. 253, 257–58, 536 A.2d 969 (1988); see also *Spinello* v. *State,* 12 Conn. App. 449, 454, 531 A.2d 167 (1987). Our review of the record and transcripts discloses ample support for the court's findings and conclusions that the lease agreement between the parties was valid and that the defendant was liable for the lease payments he had missed as well as for the costs of repairs to the truck.

The defendant's third claim, regarding the calculation of arrears, similarly challenges a discretionary function of the trial court. We see no merit to this claim. In its capacity as the trier of fact, the court found the evidence presented by the plaintiff regarding the defendant's default as persuasive. In its memorandum of decision, the court found that the defendant had not made payments for the last eighteen months of the lease and found that the monthly amount due during that period of time was $1275.89 (the base rental of

$1186.87 plus tax of $89.02). "The computation of damages . . . became a mere mathematical procedure which was reasonably utilized by the trial court." *Ernst Steel Corporation* v. *Reliance Ins. Co.*, supra, 259–60.

The fourth claim raised by the defendant is that the trial court erred in finding that the agreement between the defendant and Greenbaum did not constitute a novation of the original lease. This claim also fails. A "novation" is a term used to refer to the introduction of a new party into a new contract. *Riverside Coal Co.* v. *American Coal Co.*, 107 Conn. 40, 44, 139 A. 276 (1928). To succeed on its claim of novation, the defendant was required to prove that "the one in the position of creditor, in this case the [plaintiff], had accepted a new debtor, in this case [Greenbaum], in the place of the defendant to which [it] would look for fulfilment of the . . . obligation owing to [it]. *Norwalk Tire & Rubber Co.* v. *Manufacturer's Casualty Ins. Co.*, 109 Conn. 609, 614, 145 A. 44 [1929]. In addition, it requires proof that the plaintiffs had agreed to a discharge of the defendant's obligation to [it]. *Windsor Cement Co.* v. *Thompson,* 86 Conn. 511, 513, 86 A. 1 [1913]. These were questions of fact . . . . They have been resolved by the [trier of fact] against the defendant, and there was evidence before the [trier of fact] disputed but nevertheless sufficient if believed, to support that result." *Mace* v. *Conde Nast Publications, Inc.,* 155 Conn. 680, 688–89, 237 A.2d 360 (1967). We cannot say under the facts and circumstances in this case that the trial court's failure to find a novation was clearly erroneous.

The defendant's fifth and final claim can be bisected into the following issues: (1) whether the court erred in awarding the plaintiff $5000 attorney's fees on the complaint; and (2) whether the court erred in award-

ing the plaintiff $5000 attorney's fees for defense of the counterclaims.[3] We find error in the latter award.

As to the award on the complaint, the defendant claims that the amount was excessive in light of expert testimony elicited at trial that a $3500 fee would be reasonable for the work done by the plaintiff's attorney. The defendant's argument belies the simple fact that the court was not bound to limit its award to this evidence.[4] "[C]ourts may rely on their general knowledge of what has occurred at the proceedings before them to supply evidence in support of an award of attorney's fees." *Bizzoco* v. *Chinitz,* 193 Conn. 304, 310, 476 A.2d 572 (1984); see also *Guaranty Bank & Trust* v. *Dowling,* 4 Conn. App. 376, 386, 494 A.2d 1216 (1985). "The amount of attorney's fees to be awarded rests in the sound discretion of the trial court and will not be disturbed on appeal unless the trial court has abused its discretion: 'A court has few duties of a more delicate nature than that of fixing counsel fees. The degree of delicacy increases when the matter becomes one of review on appeal. The principle of law, which is easy to state but difficult at times to apply, is that only in case of a clear abuse of discretion by the trier may we interfere. *Hayward* v. *Plant,* 98 Conn. 374, 382, 119 A. 341 [1923] . . . . The trier is always in a more advantageous position to evaluate the services of counsel than are we.' *Hoenig* v. *Lubetkin,* 137 Conn. 516, 525, 79 A.2d 278 (1951)." *Link* v. *Shelton,* 186 Conn.

[3] Although in its initial memorandum of decision, the trial court simply awarded a bulk $10,000 to the plaintiff for attorney's fees, the court elucidated this award in its response to the defendant's request for specific findings of fact. The court ruled therein that the plaintiff would receive "$5000 for prevailing on the claim, plus $2500 each for defending two other suits brought by the defendant and the counter-claim which was the same claim as one of the lawsuits and therefore unnecessary."

[4] Neither did the court ignore this testimony. In its specific findings of fact, the court stated that its "awards were based upon reasonableness as testified to by Attorney Stevens, *which the court felt was low,* the four actual days of trial and the preparation of posttrial briefs." (Emphasis added.)

623, 629–30, 443 A.2d 902 (1982); see also *Crest Plumbing & Heating Co.* v. *DiLoreto,* 12 Conn. App. 468, 480, 531 A.2d 177 (1987).

Even in keeping with these established precedents, however, we must find error in the trial court's award of attorney's fees to the plaintiff for its defense of the defendant's counterclaims. There is no basis either by statute, under the terms of the lease agreement, or in the case law to support the trial court's award of $5000 to the plaintiff for its defense of the defendant's claims, both of which were unrelated to the lease between the parties. To begin with, the trial court found for the defendant on its counterclaim and awarded the defendant $5000 in attorney's fees. An award of counsel fees to the plaintiff for defending that same claim is incongruous and clearly erroneous.

Likewise, the defendant's second count under its counterclaim was withdrawn upon a mutual agreement and a payment by the plaintiff. The award of counsel fees to the plaintiff for defending this claim is also without support under the law and is clearly erroneous.

In summary, the trial court properly performed its factfinding function and committed no abuse of discretion in finding that no novation occurred between the plaintiff and Greenbaum and in its award of damages. The trial court's award of $5000 in counsel fees where the plaintiff prevailed on its claims under the lease was not clearly erroneous, but its award to the plaintiff of "$2500 each" for its defense of the defendant's two unrelated claims, has no basis in law and was clearly in error.

There is error in part, the judgment is set aside as to the award of attorney's fees to the plaintiff and the case is remanded to the trial court with direction to reduce the award of counsel fees to the plaintiff to $5000.

In this opinion the other judges concurred.