[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
After trial the court finds the following facts. On December 30, 1986, the plaintiffs, Archibald and Reawattie Khargie, sold real estate known as 49-51 Shultas Place and 52 Elliot Street, both in Hartford, Connecticut, to a partnership known as Shultas Place Associates. The purchase price for each parcel was $210,000. The Khargies had no dealings with any of the partners of Shultas Place prior to the sale. Instead, they dealt with a person known as Paul J. Lagassey, who was apparently associated in some way with Mark Shapiro and/or John Zubretsky.
Shultas Place Associates (the Partnership) was formed pursuant to a written partnership agreement (the Partnership Agreement) dated December 30, 1986. The partners were the defendants herein, Mark A. Shapiro, John Zubretsky, Jr. and J. Ross Wathne. The Partnership Agreement provided that the purpose CT Page 5496-CCCCC of the partnership was to purchase and manage property located at 49-51 Shultas Place and 52 Elliot Street (the Property). It further provided that promissory notes or other documents could only be executed by one or more partner(s) pursuant to written authorization signed by all the partners.
Wathne contributed $30,000 in capital to the Partnership. Shapiro and Zubretsky contributed nothing, apparently because it was contemplated that they would manage the affairs of the Partnership. Under the terms of the Partnership Agreement, the net losses of the partnership were to be borne by Shapiro and Zubretsky only unless and until they each contributed at least $15,000 in capital to the Partnership. There was no evidence presented that either Shapiro or Zubretsky ever contributed that amount of capital to the Partnership.
The Khargies were not at the closing of the sale of the Property to the Partnership and had no knowledge of the identity of the partners thereof either prior to or at the closing. They never requested a copy of the Partnership Agreement, nor did they request or obtain a partnership resolution or any other documentation evidencing the authority of the Partnership to enter into the purchase and mortgage transaction.
Although the Partnership Agreement bears the same date as the closing, December 30, 1986, it was not signed by Wathne until after the closing. Wathne had no knowledge of the closing, or that Zubretsky and Shapiro had signed promissory notes on behalf of the Partnership.
As consideration for their sale of the Property to the Partnership the Khargies received $172,500 in cash for each parcel, for a total gross cash proceeds of $345,000 and a promissory note in the original principal amount of $37,500 as to each property, for a total of $75,000 in notes. Each note was signed: "Shultas Place Associates, By Mark A. Shapiro, General Partner, By John M. Zubretsky, Jr., General Partner." One note was secured by a mortgage on the Shultas Place property and the other by a mortgage on the Elliot Street property. Those notes will be referred to herein as the "Notes". The mortgages securing the Notes were subordinate to the mortgages to Bank of Boston Connecticut described below.
The Partnership financed their cash payments for the purchase of the Property by means of a mortgage loan from the Bank of CT Page 5496-DDDDD Boston Connecticut in the principal amount of $175,000 on the Shultas Place parcel and $170,000 on the Elliot Street parcel. The promissory notes to the Bank of Boston were signed in the same manner as the notes to the Khargies, that is, signed only by Shapiro and Zubretsky as general partners of the Partnership.
In 1987 a dispute arose between Shapiro and Zubretsky concerning their interests in partnerships unrelated to the Shultas Place Partnership. In culmination of that dispute, Zubretsky and Shapiro entered into a settlement agreement pursuant to which Zubretsky executed an assignment of partnership interest and a quit claim deed for the Property. Thereafter, further disputes arose between Zubretsky and Shapiro. Zubretsky commenced a lawsuit against Shapiro in conjunction with which he filed a Notice of Lis Pendens affecting the Property. The Lis Pendens was recorded on July 7, 1988 on the Hartford Land Records and stated that Zubretsky had commenced an action against Shapiro seeking damages for fraud, misrepresentation and breach of partnership agreements and that the litigation may affect an interest in the Property
From the date of the inception of the Partnership, Shapiro was primarily responsible for managing its daily operations. Zubretsky had minor involvement in those daily operations. Wathne was not involved at all in the management of the affairs of the Partnership. Some of the management responsibilities had been turned over to Omni Management Corp. of which Zubretsky and Shapiro were principals. After Zubretsky assigned his Partnership interest to Shapiro on December 4, 1987, he had no further involvement with the operations of the Partnership and was not informed of any of its affairs. After Zubretsky assigned his interest in the Partnership, Wathne unsuccessfully attempted to obtain information as to the financial affairs of the Partnership from Shapiro.
At the time Zubretsky assigned his Partnership interest to Shapiro, the Partnership was paying its debts. However, in 1989 the Partnership stopped making mortgage payments both to the Khargies and to Bank of Boston Connecticut. Facing the possibility of foreclosure, Shapiro arranged for a sale of the Property to R S Realty, Inc., a corporation of which Shapiro was a principal. The two loans to Bank of Boston Connecticut were paid from proceeds of a mortgage loan to R S Realty from First National Bank of Connecticut in the original principal amount of $490,000. CT Page 5496-EEEEE
In connection with the sale of the Property to R S Realty, the Khargies executed subordination agreements by which their second mortgage on each property was subordinated to the new first mortgage to First National Bank of Connecticut. The effect of that subordination was to greatly impair the collateral securing the Notes. Prior to the sale to R S Realty, the second mortgage on the Shultas Place parcel had been; subordinate to a mortgage in the amount of $175,000, and the second mortgage on the Elliot Street parcel had been subordinate to a mortgage in the amount $170,000. After the sale, each second mortgage was subordinate to a blanket mortgage in the amount of $490,000.
In addition to signing the subordination agreements, the Khargies also signed two mortgage and note modification agreements dated May 9, 1989. Under the terms of those agreements the Khargies agreed that R S Realty, Inc. was primarily liable as maker of the Notes and that the Partnership was secondarily liable. The modification agreements contained the following language:
 2. [Khargie] hereby acknowledges receipt of Twelve Thousand Five Hundred Dollars ($12,500.00) for payment of principal under the Promissory Note and all references to the sum of Thirty Seven Thousand Five Hundred Dollars ($37,500) as a principal balance under the Promissory Note shall be deleted and the sum of Twenty Five Thousand Dollars ($25,000.00) shall be placed in its stead.
The modification agreements were signed by Shapiro as a general partner of Partnership. They were not signed by Wathne or Zubretsky, who was no longer a partner of Partnership. Neither Wathne nor Zubretsky had knowledge of or consented to the sale to R S Realty, the subordination to the $490,000 blanket mortgage or the execution of the modification agreements.
The Khargies did not request or obtain any partnership resolution, partnership agreement or other documentation evidencing partnership authority as part of the May, 1989 transaction. They undertook no inquiry as to the financial status of the Partnership at the time of the modification agreements, nor did they make any investigation whatsoever about the Partnership.
On May 7, 1991, Park Realty, Inc., formerly known as R S Realty, Inc. sold the Property. The plaintiffs consented to the CT Page 5496-FFFFF sale, released their second mortgages on both parcels of the Property and received a total of $16,500 in connection with the sale.
Upon the sale of the Property to R S Realty, the Partnership ceased to have any assets. Shapiro received a discharge in bankruptcy on May 13, 1991. In this action the Khargies are seeking to recover on the Notes from Wathne and Zubretsky.
The portions of the Connecticut's version of the Uniform Partnership Act relevant to this action are set forth as follows:
 Sec. 34-53. All partners are liable: (a) Jointly and severally for everything chargeable to the partnership under sections 34-51 and 34-52; (b) jointly for all other debts and obligations of the partnership; but any partner may enter into a separate obligation to perform a partnership contract.
 Sec. 34-47. Actions of partners. (1) Every partner is an agent of the partnership for the purpose of its business, and the act of every partner, including the execution in the partnership name of any instrument, for apparently carrying on in the usual way the business of the partnership of which he is a member binds the partnership, unless the partner so acting has in fact no authority to act for the partnership in the particular matter, and the person with whom he is dealing has knowledge of the fact that he has no such authority.
 (4) No act of a partner in contravention of a restriction on authority shall bind the partnership to persons having knowledge of the restriction.
Emphasis added.
The fact that Wathne did not sign the Notes does not in and of itself relieve him from liability thereon. Connecticut General Statutes § 34-47 provides that "(1) Every partner is an agent of the partnership for the purpose of its business, and the act of every partner, including the execution in the partnership name ofany instrument, for apparently carrying on in the usual way the business of the partnership of which he is a member binds the partnership." However, under the terms of the Partnership CT Page 5496-GGGGG Agreement of the Partnership, the signing of a promissory note required the authorization of all of the partners. The Khargies did not obtain that authorization. The Partnership Agreement also provided that Wathne did not have liability for the partnership debt evidenced by the Notes until such time as Shapiro and Zubretsky contributed capital in an amount equal to that contributed by Wathne. That never occurred.
Connecticut General Statutes § 34-47 (4) provides that "No act of a partner in contravention of a restriction on authority shall bind the partnership to persons having knowledge of the restriction." Shapiro and Zubretsky were not authorized to sign the Notes on behalf of the Partnership without the consent of all of the partners. In addition, they had no authority to bind one of the partners, Wathne, to liability under the Notes. If the Khargies had knowledge of the requirement for consent of all partners, or the restriction on Wathne's liability, then Wathne would clearly have no liability under the Notes. ConnecticutNational Bank v. Cooper, 232 Conn. 405, 417, 656 A.2d 215 (1995). "The manifest intent of § 34-47 (4) is to protect innocent partners, . . ., from the undertakings of a general partner in contravention of a specific restriction on the authority of the general partner, when the restriction is known to the third party with whom the partner is dealing." Id.
In this case the Khargies have any actual knowledge about the Partnership. However, Wathne, an "innocent" partner, should not be deprived of the benefit of § 34-47 (4), simply because of the Khargies' ignorance where that ignorance arose from a complete lack of due diligence and failure to make any inquiry whatsoever as to the Partnership. The Khargies did not know of Wathne's existence as a partner at the time of the sale to the Partnership. They never asked for a list of partners, a partnership resolution or a copy of the Partnership Agreement. In law, full and adequate means of knowledge ordinarily are equivalent to knowledge. Mastronardi V. Infante, 34 Conn. App. 584,592, 642 A.2d 84 (1994); Attardo v. Ambriscoe, 147 Conn. 708,711, 166 A.2d 458 (1960); Myers v. Burke, 120 Conn. 69, 75,179 A. 88 (1935).
Since the Khargies apparently had a full and adequate means of obtaining knowledge, of the restriction on Wathne's liability and the requirement for consent of all partners to execute the Notes, merely by obtaining a copy of the Partnership Agreement, the court deems that they had knowledge of Wathne's lack of CT Page 5496-HHHHH consent to the execution of the Notes and the restriction on Wathne's liability. Therefore, Wathne never had liability on the Notes.
The defendants have argued that the mortgage modification agreements executed by the Khargies on May 9, 1989 constituted a novation, which relieved them of liability on the Notes. The court disagrees. A novation is a term used to refer to the introduction of a new party into a new contract. Spicer v.Spicer, 33 Conn. App. 152, 158, 634 A.2d 902 (1993); RiversideCoal Co. v. American Coal Co., 107 Conn. 40, 44, 139 A. 276
(1927). To succeed on their claim of novation, the defendants must prove that the Khargies accepted R S Realty in the place of the the Partnership and agreed to look only to R S for payment on the Notes. Norwalk Tire Rubber Co. v. Manufacturer'sCasualty Ins. Co., 109 Conn. 609, 614, 145 A. 44 (1929). In addition, Wathne and Zubretsky must also prove that the Khargies agreed to a discharge of the Partnership's obligation on the Notes. Windsor Cement Co. v. Thompson, 86 Conn. 511, 513, 86 A. 1
(1913); Ruwet-Sibley Equipment Corporation v. Stebbins, 15 Conn. App. 21,26, 542 A.2d 1171, cert. dismissed, 209 Conn. 806,548 A.2d 437 (1988). Under the terms of the modification agreements executed on May 9, 1989, the Khargies did not release the Partnership from liability, but merely agreed that R S would have primary liability, with the Partnership retaining secondary liability. Therefore, a novation did not occur.
Zubretsky initially had liability under the Notes as a partner of the Partnership who had consented to the execution of the Notes. However, his liability had been extinguished by the time of trial, as had any arguable liability of Wathne, because that liability had been discharged pursuant to Connecticut General Statutes § 42a-3-606.[1] Under that statute, the holder of an instrument discharges any party to that instrument if without such party's consent the holder unjustifiably impairs any collateral for the instrument given by or on behalf of the party or any person against whom the holder has a right of recourse. It is clear that the Khargies allowed the collateral to be greatly impaired by virtue of the May, 1989 sale to R S Realty. They allowed the mortgages securing payment of the Notes to be subordinated to a first mortgage which was at least $315,000 greater than the mortgage to which the mortgages securing the Notes were originally subordinated. Shultas Place Associates did consent to the subordination, but at the time of the consent, that Partnership consisted only of Shapiro. The collateral was CT Page 5496-IIIII further impaired when the Khargies released the mortgages securing the Notes without the permission of Wathne or Zubretsky.
At the time of the sale to R S Realty the Khargies again failed to take any measures to ascertain the identity of the partners of the Partnership or to obtain a copy of the Partnership Agreement, or a partnership resolution. The fact that Zubretsky had signed the Notes as a general partner of the Partnership, but had not signed the modification agreements, gave them actual notice that Zubretsky might no longer be a partner, and, therefore, would have no liability on the Notes in light of his lack of consent to the impairment of the collateral. Moreover, a review of the land records would have revealed that Zubretsky and Shapiro were involved in litigation concerning the Property. The Khargies were presumed to know of the issues of litigation affecting the Property. Kukanskis v. Griffith,180 Conn. 501, 507, 430 A.2d 21 (1980).
For the reasons set forth above, the plaintiffs cannot recover on the Notes from either Wathne or Zubretsky. Judgment may enter in favor of the defendants.
By the court,
Aurigemma, J.