NANCY P. SPICER, EXECUTRIX (ESTATE OF JOHN M. SPICER) *v.* WILLIAM C. SPICER III
(12081)

FOTI, HEIMAN and SCHALLER, Js.

Argued September 29—decision released December 7, 1993

*Andrew J. Brand,* with whom, on the brief, was *Raymond J. Baribeault, Jr.,* for the appellant (defendant).

*James G. Green, Jr.,* with whom were *Ann Walker* and, on the brief, *Robert M. Barrack,* for the appellee (plaintiff).

HEIMAN, J. The defendant appeals from an order entered pursuant to General Statutes § 52-410,[1] grant-

---

[1] General Statutes § 52-410 provides in pertinent part: "(a) A party to a written agreement for arbitration claiming the neglect or refusal of

ing the plaintiff's application to compel the defendant to proceed with arbitration. We affirm the judgment of the trial court.

The trial court found the following facts. The defendant and the plaintiff's decedent were brothers and had, for a number of years, operated various businesses in the areas of Groton and Noank through a partnership and a corporation. On November 30, 1983, the defendant and the plaintiff's decedent executed a buy-sell agreement setting forth a method for the resolution of their interests in both the partnership and the corporation in the event of the death or disability of either party. The agreement further contained provisions relating to the sale of the interest of either party in either the partnership or corporation during their lifetimes. The sale provision stated that "[i]n the event that any Owner shall elect to sell his business interests during his lifetime, in whole or in part, he shall give the other Owner written notice of his intention to sell, including the business interests which he intends to sell, and the remaining Owner shall, if permitted by law, purchase such shares within ninety (90) days from the date of such notice. Any purchase under this paragraph shall be made at a price not greater than that determined as set out in Schedule A attached." Schedule A set the combined value of the companies at $1,500,000.

The agreement also contained an arbitration clause that stated: "In the event there is any disagreement

another to proceed with an arbitration thereunder may make application to the superior court for the judicial district in which one of the parties resides or, in a controversy concerning land, for the judicial district in which the land is situated . . . for an order directing the parties to proceed with the arbitration in compliance with their agreement. . . .

"(c) The parties shall be considered as at issue on the allegations of the complaint unless the defendant files [an] answer thereto within five days from the return day, and the court or judge shall hear the matter either at a short calendar session, or as a privileged case, or otherwise, in order to dispose of the case with the least possible delay, and shall either grant the order or deny the application, according to the rights of the parties."

between the Owners hereto as to the value of the businesses, or in any other matter connected with this Agreement, it shall be settled by arbitration."

On January 12, 1990, the defendant and the plaintiff's decedent executed a "memo of understanding" effective January 1, 1990, because the "relations between John M. Spicer and William C. Spicer, 3rd, have changed to a point detrimental to the continued operation and survival of their businesses." In the memorandum, the defendant agreed to purchase, and the plaintiff's decedent agreed to sell, the decedent's interest in the partnership and corporation. The memorandum set forth the terms of the sale, including the sale price, interest rate, payment schedule, and postsale insurance provisions. The memorandum valued the combined worth of the companies at $4,400,000. The memorandum of understanding did not refer to the buy-sell agreement.

After the parties executed the memorandum of understanding, the plaintiff's decedent withdrew from the management of the partnership and corporation and the defendant began making payments to the plaintiff's decedent in accordance with the terms of the memorandum. The plaintiff's decedent died on April 30, 1991. Shortly thereafter, the defendant ceased making the installment payments.

On June 24, 1992, the plaintiff, the widow of the decedent and the executrix of his estate, filed a petition for an order to appoint an arbitrator pursuant to General Statutes § 52-411[2] and for an order to proceed with

___

[2] General Statutes § 52-411 provides: "(a) If, in a written agreement to arbitrate, a method of appointing an arbitrator or arbitrators or an umpire has been provided, the method shall be followed.

"(b) If no method is provided therein, or if a method is provided and any party thereto fails to use the method, or if for any other reason there is a failure in the naming of an arbitrator or arbitrators or an umpire, or if any arbitrator or umpire dies or is unable or refuses to serve, upon appli-

arbitration pursuant with § 52-410. The plaintiff alleged that the memorandum of understanding was in furtherance of the buy-sell agreement. The plaintiff also alleged that a dispute arose under the buy-sell agreement, which required arbitration.

On October 26, 1992, the trial court held a hearing on the complaint. The two agreements were marked as full exhibits and the plaintiff testified as to the dispute. The trial court ordered simultaneous briefs on the issue of the arbitrability of the memorandum of understanding and the buy-sell agreement. The defendant neither objected to this order nor requested an additional evidentiary hearing on the issue of arbitrability.

On December 29, 1992, the trial court issued a memorandum of decision. The trial court found that the memorandum of understanding did not supersede the buy-sell agreement as a novation because the "memorandum does not contain terms that are either wholly or substantially inconsistent with the agreement, but merely provides the details for one of the contingencies contemplated in the agreement, namely, an inter vivos transfer of one partner's assets to the other partner." The trial court then ordered arbitration of the matter because "under the broad language of [the arbitration clause], whether a dispute as to any matter con-

cation by a party to the arbitration agreement, the superior court for the judicial district in which one of the parties resides or, in a controversy concerning land, for the judicial district in which the land is situated or, when the court is not in session, any judge thereof, shall appoint an arbitrator or arbitrators or an umpire, as the case may require. A person so appointed an arbitrator or umpire shall act under any arbitration agreement with the same force and effect as if he had been specifically named or referred to therein. Unless otherwise provided in the agreement, the arbitration shall be by a single arbitrator.

"(c) An application under this section and the proceedings thereon shall conform to the application and proceedings provided for in section 52-410, except that such changes shall be made in the complaint as may be necessary to correctly and concisely state the plaintiff's claim."

nected with the agreement is arbitrable is itself a question for the arbitrator to decide." The trial court also found that "the memorandum is a matter connected to the agreement and the court orders that any disagreement as to the memorandum be submitted to arbitration."

On appeal, the defendant claims that the trial court improperly ordered the parties to proceed with arbitration by (1) concluding that the memorandum of understanding did not supersede the buy-sell agreement but was in furtherance of it, (2) concluding that the memorandum of understanding required the parties to arbitrate, and (3) failing to hold a full evidentiary hearing on the plaintiff's petition for arbitration instead of deciding the issue as a matter of law. We affirm the judgment of the trial court.

As a threshold matter, we note that "[a]n order directing the parties to proceed with arbitration is a final judgment from which one can appeal. *Dewart* v. *Northeastern Gas Transmission Co.,* 139 Conn. 512, 514, 95 A.2d 381 (1953)." *Delio* v. *Earth Garden Florist, Inc.,* 28 Conn. App. 73, 79–80, 609 A.2d 1057 (1992); see *Success Centers, Inc.* v. *Huntington Learning Centers, Inc.,* 223 Conn. 761, 769, 613 A.2d 1320 (1992). Thus, we have the requisite jurisdiction.

I

The defendant first claims that the trial court improperly ordered the parties to proceed with arbitration by concluding that the memorandum of understanding did not supersede the buy-sell agreement but was in furtherance of it. In determining the scope of a contract, "[t]he plain, clear language of the contract must be accorded its logical effect." *Four D's, Inc.* v. *Mattera,* 25 Conn. App. 308, 313, 594 A.2d 484 (1991). " 'The intention of the parties to a contract is to be determined from the language used interpreted in the light of the

▮▮▮▮

situation of the parties, and the circumstances connected with the transaction. The question is not what intention existed in the minds of the parties but what intention is expressed in the language used.' " *E & F Construction Co.* v. *Rissil Construction Associates, Inc.,* 181 Conn. 317, 320, 435 A.2d 343 (1980); *Balboa Ins. Co.* v. *Zaleski,* 12 Conn. App. 529, 535, 532 A.2d 973, cert. denied, 206 Conn. 802, 535 A.2d 1315 (1987). "As we have stated, in situations in which the parties have their agreement in writing, their intention is to be determined from its language and not on the basis of any intention either may have secretly entertained . . . ." (Citations omitted; internal quotation marks omitted.) *Thompson & Peck, Inc.* v. *Harbor Marine Contracting Corporation,* 203 Conn. 123, 130–31, 523 A.2d 1266 (1987). "Normally, a determination of what the parties intended by contractual commitments is 'a question of fact, reversible only if the trier of fact could not reasonably have arrived at the conclusion it had reached'; *Thompson & Peck, Inc.* v. *Harbor Marine Contracting Corporation,* [supra]. . . ." *Gaynor Electric Co.* v. *Hollander,* 29 Conn. App. 865, 872, 618 A.2d 532 (1993).

The trial court determined that the memorandum of understanding was not a novation. "A 'novation' is a term used to refer to the introduction of a new party into a new contract. *Riverside Coal Co.* v. *American Coal Co.,* 107 Conn. 40, 44, 139 A. 276 [1927]. To succeed on its claim of novation, the defendant was required to prove that 'the one in the position of creditor, in this case the [decedent], had accepted a new debtor . . . in the place of the defendant to which [he] would look for fulfillment of the . . . obligation owing to [him]. *Norwalk Tire & Rubber Co.* v. *Manufacturer's Casualty Ins. Co.,* 109 Conn. 609, 614, 145 A. 44 [1929]. In addition, it requires proof that the [decedent] had agreed to a discharge of the defendant's obligation to

[him]. *Windsor Cement Co.* v. *Thompson,* 86 Conn. 511, 513, 86 A. 1 [1913].' " *Ruwet-Sibley Equipment Corporation* v. *Stebbins,* 15 Conn. App. 21, 26, 542 A.2d 1171, cert. dismissed, 209 Conn. 806, 548 A.2d 437 (1988). This was a question of fact to be determined by the trial court. Id. On the basis of the evidence, we conclude that the trial court could reasonably have found as it did.

The evidence supports a finding that the memorandum of understanding was a modification of the buy-sell agreement. "Parties may alter any term of an existing contract by entering into a subsequent contract." *Manzin* v. *United Bank & Trust Co.,* 6 Conn. App. 513, 516, 506 A.2d 169 (1986). The contract as modified becomes a new contract between the parties. 17A Am. Jur. 2d 527, Contracts § 513 (1991). The language of the memorandum of understanding when read together with the language of the buy-sell agreement provides sufficient foundation for the trial court reasonably to find that the memorandum of understanding only modified the provisions of the sale of the business clauses without modifying or abrogating the buy-sell agreement in toto. The memorandum of understanding implicated only the inter vivos provision of the buy-sell agreement and did not affect any other portion.

## II

The defendant next claims that the trial court improperly ordered the parties to proceed to arbitration by concluding that the memorandum of understanding required the parties to arbitrate. "Arbitration is a creature of contract. . . . It is designed to avoid litigation and secure prompt settlement of disputes and is favored by the law. . . . But a person can be compelled to arbitrate a dispute only if, to the extent that, and in the manner which, he has agreed so to do. . . . No one can be forced to arbitrate a contract dispute

who has not previously agreed to do so. . . . The issue of whether the parties to a contract have agreed to arbitration is controlled by their intention. . . . The intention of the parties is, in turn, a question of fact. . . . The trial court's finding on that issue is not reversible by this court unless it was a finding that the court could not reasonably have made. . . . The [defendant] can prevail on appeal, therefore, only if [he] is able to demonstrate that the trial court's interpretation of the amended contract was clearly erroneous. . . .

"The cardinal rule in construing contracts is to ascertain the intention of the parties. . . . [I]nterpretation of an agreement [by a court] is a search for the intent of the parties. . . . A contract is to be construed [by the trier of fact] according to what is fairly to be assumed to be the understanding and intent of the parties. . . . Such a determination of what the parties intended is normally a question of fact, reversible only if the trier of fact could not reasonably have arrived at the conclusion that it had reached. . . . The intent developed is alone material, and when that is ascertained it is conclusive. . . ." (Citations omitted; internal quotation marks omitted.) *A. Dubreuil & Sons, Inc.* v. *Lisbon,* 215 Conn. 604, 608–10, 577 A.2d 709 (1990).

The issue, therefore, of whether the arbitration clause in the buy-sell agreement applied to the memorandum of understanding is a question of fact for the trial court. " 'A finding of fact is clearly erroneous when there is no evidence in the record to support it . . . or when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. . . .' " (Citations omitted.) *Dalia* v. *Lawrence,* 226 Conn. 51, 71, 627 A.2d 392 (1993); *Central Connecticut Teachers Federal Credit Union* v. *Grant,* 27 Conn. App. 435, 437–38, 606 A.2d 729 (1992).

Since we concluded that the memorandum of understanding modified the buy-sell agreement only as to the provisions for the sale of the business, the arbitration clause was still effective. The contract, as modified, became the new contract between the parties and contained the arbitration clause. 17A Am. Jur. 2d 527, supra. Therefore, the trial court decision was not clearly erroneous.

## III

The defendant next asserts that the trial court improperly ordered the parties to proceed to arbitration without holding a full evidentiary hearing on the plaintiff's petition. The record on appeal fails to disclose any request by the defendant to the trial court for a full evidentiary hearing. Further, the defendant, at the hearing, failed to object to the court's request for briefs on the arbitration issue.

"This court will not review issues of law that are raised for the first time on appeal." *State* v *Harvey,* 27 Conn. App. 171, 186, 605 A.2d 563, cert. denied, 222 Conn. 907, 608 A.2d 693 (1992). "We have repeatedly held that this court will not consider claimed errors on the part of the trial court unless it appears on the record that the question was distinctly raised at trial and was ruled upon and decided by the court adversely to the appellant's claim. . . ." (Citations omitted; internal quotation marks omitted.) *Associated Catalog Merchandisers, Inc.* v. *Chagnon,* 210 Conn. 734, 750, 557 A.2d 525 (1989); *Keating* v. *Glass Container Corporation,* 197 Conn. 428, 431, 497 A.2d 763 (1985); *Biggs* v. *Warden,* 26 Conn. App. 52, 57, 597 A.2d 839, cert. denied, 221 Conn. 902, 600 A.2d 1029 (1991). "The purpose of the rule is to provide the trial court with an opportunity to pass on claims of error which may become the subject of an appeal." *Kolich* v. *Shugrue,* 198 Conn. 322, 325, 502 A.2d 918 (1986). Accordingly,

we decline to review this claim. Nor does it rise to the level of plain error. Practice Book § 4185. Such review is reserved for "truly extraordinary situations where the existence of the error is so obvious that it affects the fairness and integrity of and public confidence in the judicial proceedings." *Saporoso* v. *Aetna Life & Casualty,* 221 Conn. 356, 363, 603 A.2d 1160 (1992); *Solomon* v. *Levitt,* 30 Conn. App. 125, 128, 618 A.2d 1389 (1993). When we apply this standard, it is clear that the trial court did not commit plain error.

The judgment is affirmed.

In this opinion the other judges concurred.