# BERNARD GREEN, TRUSTEE *v.* CONNECTICUT DISPOSAL SERVICE, INC., ET AL.
## (AC 19736)

Zarella, Pellegrino and O'Connell, Js.

Argued September 21, 2000—officially released February 27, 2001

*John J. Robacynski*, for the appellants (defendant Frank Perrotti, Jr., et al.).

*Joel Z. Green*, for the appellee (plaintiff).

*Opinion*

PELLEGRINO, J. The defendants Frank Perrotti, Jr., Ronald Bertasi, William A. Lockwood, Call Peter, Inc.,

and Frank Perrotti & Sons, Inc. (guarantors), appeal from the trial court's judgment confirming an arbitration award in favor of the plaintiff pursuant to General Statutes § 52-417.[1] On appeal, the guarantors claim that the court improperly confirmed the award because (1) they never agreed to arbitrate disputes with the plaintiff and (2) the arbitrators exceeded their powers in making the award. We affirm the judgment of the trial court.

The following facts are relevant to this appeal. In December, 1996, the plaintiff, Bernard Green, the holder of two promissory notes as trustee for Gerald T. Raynor, Alfred L. Bowes, Jr., and Mary E. Bowes, instituted a civil action against the debtor, the defendant Connecticut Disposal Service, Inc. (debtor), and the guarantors of the debts to collect the balances that were past due.

In January, 1997, the defendants[2] filed a motion to dismiss the plaintiff's action, claiming that the court lacked subject matter jurisdiction over the dispute because of the arbitration clauses in the parties' agreements. The plaintiff countered that the proper vehicle under the circumstances was a motion to stay the proceedings. The court agreed and denied the motion to dismiss. In February, 1997, the defendants filed a motion to stay the proceedings pending arbitration, and, in April, 1997, the court granted that motion. In June, 1997, the plaintiff filed a motion to terminate the stay, which was successfully opposed by the defendants.

---

[1] General Statutes § 52-417 provides in relevant part: "At any time within one year after an award has been rendered and the parties to the arbitration notified thereof, any party to the arbitration may make application to the superior court for the judicial district in which one of the parties resides . . . for an order confirming the award. The court or judge shall grant such an order confirming the award unless the award is vacated, modified or corrected as prescribed in sections 52-418 and 52-419."

[2] Throughout the proceedings in the trial court and during arbitration, the debtor and the guarantors have been represented by the same attorney, who, until now, has not attempted to differentiate their interests in regard to the plaintiff's claims.

In October, 1997, the plaintiff, faced with the defendants' inaction, made a demand for arbitration, naming the defendants as respondents. The defendants filed an answer and special defenses, and the matter proceeded to arbitration in June, 1998. In August, 1998, the arbitrators found in favor of the plaintiff and against the defendants.

In September, 1998, the guarantors filed an application with the court to vacate the arbitration award as to them, claiming for the first time that they never agreed to arbitrate. The plaintiff filed an objection, and, after a hearing in November, 1998, the court denied the application to vacate the award. In a memorandum of decision dated February 9, 1999, the court found that the guarantors not only had agreed to arbitrate, but also actively and repeatedly had sought arbitration.

In April, 1999, the plaintiff filed a motion to confirm the award. The court granted the plaintiff's motion in May, 1999. The guarantors thereafter commenced this appeal from the order confirming the award.

I

The guarantors claim on appeal that they were not parties to the agreements that contained the arbitration clauses and, thus, that they never agreed to arbitrate disputes with the plaintiff. They claim that because they never agreed to arbitrate, all of the proceedings leading up to the arbitrators' award were between only the plaintiff and the debtor, and, therefore, the award as to the guarantors was improper. We disagree.

Some additional facts are necessary for our consideration of this issue. The promissory notes at issue were executed in conjunction with the debtor's purchase of two refuse collection businesses from other parties not involved in this litigation. The plaintiff subsequently became the holder of the notes. Each transaction gener-

ated three documents: A purchase and sale agreement, a promissory note and a guaranty. The purchase and sale agreements each contained a broadly worded arbitration clause[3] and explicitly named each guarantor. Although the guarantors were not signatories to the purchase and sale agreements, they did execute separate guaranty agreements that were listed as exhibits to the purchase and sale agreements. The promissory notes also were listed as exhibits to the respective purchase and sale agreements. The guarantors claim that because they were not parties to each purchase and sale agreement itself, they did not agree to arbitrate disputes.

"Because we favor arbitration as a means of settling private disputes, we undertake judicial review of arbitration awards in a manner designed to minimize interference with an efficient and economical system of alternative dispute resolution." (Internal quotation marks omitted.) *White* v. *Kampner*, 229 Conn. 465, 471, 641 A.2d 1381 (1994).

"Arbitration is a creature of contract. . . . It is designed to avoid litigation and secure prompt settlement of disputes and is favored by the law." (Internal quotation marks omitted.) *Spicer* v. *Spicer*, 33 Conn. App. 152, 159, 634 A.2d 902 (1993), cert. denied, 228 Conn. 920, 636 A.2d 850 (1994). "[A] person can be

---

[3] The arbitration clause provided: "In the event of any dispute between the parties concerning any matter provided for herein or arising hereunder, the parties agree that the same shall be submitted to arbitration at New Haven, Connecticut, in accordance with the rules of arbitration of the American Arbitration Association then obtaining. The parties agree that such issue shall be determined by three (3) arbitrators appointed by said Association and that the decision of such arbitrators shall be final and binding upon the parties. The parties further agree that in the event either shall submit a dispute to arbitration that the other party shall cooperate to facilitate resolution of such dispute through arbitration at the earliest possible time. In the event of any monetary arbitration decision against Seller and in favor of Buyer, then the same shall be subject to credit as provided herein."

compelled to arbitrate a dispute only if, to the extent that, and in the manner which, he has agreed to do so. . . . No one can be forced to arbitrate a contract dispute who has not previously agreed to do so." (Internal quotation marks omitted.) Id., 159–60. Further, pursuant to Connecticut's statutory arbitration scheme, that agreement must be expressed in a writing. *Bennett* v. *Meader*, 208 Conn. 352, 364, 545 A.2d 553 (1988); see also General Statutes § 52-408.

"The issue of whether the parties to a contract have agreed to arbitration is controlled by their intention. . . . The intention of the parties is, in turn, a question of fact. . . . The trial court's finding on that issue is not reversible by this court unless it was a finding that the court could not reasonably have made." (Internal quotation marks omitted.) *Spicer* v. *Spicer*, supra, 33 Conn. App. 160. The guarantors can prevail on appeal, therefore, only if they are able to demonstrate that the court's finding that they agreed to arbitrate was clearly erroneous. See id.

The court, after a hearing, considered the evidence and determined that the dispute between *all* of the parties had been presented properly to the arbitrators because valid agreements to arbitrate existed between the plaintiff and *both* the guarantors and the debtor. After reviewing the evidence, the pleadings in the record and the court's analysis, we hold that the court correctly found that the guarantors had agreed to arbitrate and, therefore, properly confirmed the arbitrators' award.

The court analyzed the purchase and sale agreements, promissory notes and guarantees within the framework of the "positive assurance test,"[4] and

---

[1] Pursuant to the positive assurance test, "judicial inquiry . . . must be strictly confined to the question whether the reluctant party did agree to arbitrate the grievance. . . . An order to arbitrate the particular grievance [or an application to confirm an arbitration award] should not be denied unless it may be said with positive assurance that the arbitration clause is

also considered the guarantors' repeated prior submissions in which they claimed to have agreed to arbitration. It noted that the guarantors had actively sought the benefits of arbitration. Only after obtaining an unfavorable result did the guarantors claim that they were not parties to the agreement to arbitrate.

A more detailed description of the procedural history of this case is necessary for our consideration of this issue. The plaintiff initially sought to resolve this dispute by commencing an action against *all* of the defendants in the Superior Court. In response, the defendants' attorney filed a motion to dismiss, clearly naming the debtor and the guarantors as parties and insisting that they were all parties to an arbitration agreement with the plaintiff.[5] Moreover, in their supporting memorandum of law, the defendants argued that they were all parties to the arbitration agreements, that the guarantees clearly fell within the purview of those agreements and that the court could not reasonably interpret the agreements otherwise.[6]

---

not susceptible of an interpretation that covers the asserted dispute. Doubts should be resolved in favor of coverage. . . . Whether the parties have agreed to . . . [arbitration] . . . depends on the intention manifested in the agreement the parties have made. . . . The manifestation of arbitrability may be by express provision to that effect or the use of broad terms . . . and courts must look to the plain language of the contract and construe the contract as a whole when determining the intent of the parties." (Citations omitted; internal quotation marks omitted.) *Weitz Co.* v. *Shoreline Care Ltd. Partnership*, 39 Conn. App. 641, 644–45, 666 A.2d 835 (1995); see *White* v. *Kampner*, supra, 229 Conn. 472–73; *Board of Education* v. *Frey*, 174 Conn. 578, 582, 392 A.2d 466 (1978).

[5] The motion to dismiss provided in relevant part: "[D]efendants, Connecticut Disposal Service, Inc., *Call Peter, Inc., Frank Perrotti & Sons, Inc., Ronald P. Bertasi, Frank Perrotti, Jr., and William A. Lockwood,* hereby move the court for an order dismissing this action for reason that it lacks jurisdiction over the subject matter due to an *agreement among the plaintiff and the defendants* to submit their disputes to binding arbitration." (Emphasis added.)

[6] The defendants' memorandum of law in support of their motion to dismiss provided in relevant part: "[T]he plaintiff and *the defendants* entered into an agreement (the 'Agreement') whereby certain assets of plaintiff's business were purchased by *the defendants*. . . . The Agreement . . . pro-

At the January 21, 1997 hearing on the motion to dismiss, the defendants' attorney stated that he "represent[ed] all the defendants," and that the arbitration panel was "the body that the parties themselves agreed in the contract to go by." In their subsequent motion to stay the litigation pending arbitration, the defendants again manifested their intent to agree to arbitration and their desire to proceed accordingly.[7] Their supporting memorandum repeated the arguments from their memorandum in support of their motion to dismiss.[8]

The defendants again advanced these arguments in their June 6, 1997 memorandum of law opposing the plaintiff's motion for termination of the stay. That memorandum provided that "[b]oth the promissory notes *and the guarantees* arose expressly and directly out of

vided that any dispute between the parties concerning any matter in or arising under the Agreement be submitted to binding arbitration . . . . There is no question that the parties to this action have contractually committed themselves to binding arbitration. It is also very clear that the payment of the notes *and guarantees* complained of in the present action are matters in or arising under the Agreements. Under the positive assurance test, no reasonable interpretation can be made denying the arbitrability of the parties' payment dispute in light of the express arbitration clauses contained in the Agreements. Even assuming arguendo that there is a doubt as to the arbitrability of the parties' dispute, which there is not, any such doubt must be resolved in favor of arbitration." (Emphasis added.)

[7] The defendants' motion for a stay provided in relevant part: "Defendants, Connecticut Disposal Service, Inc., *Call Peter, Inc., Frank Perrotti & Sons, Inc., Ronald P. Bertasi, Frank Perrotti, Jr., and William A. Lockwood, as parties to these arbitration agreements with plaintiffs* are ready and willing to proceed with said arbitrations." (Emphasis added.)

[8] The defendants' memorandum in support of their motion for a stay provided in relevant part: "There is no question that the parties to this action have contractually committed themselves on two separate occasions to binding arbitration. It is also very clear that the payment of the notes *and guarantees* complained of in the present action are matters in or arising under the Agreements. Under the positive assurance test, no reasonable interpretation can be made denying the arbitrability of the parties' payment dispute in light of the express arbitration clauses contained in the Agreements. Even assuming arguendo that there is a doubt as to the arbitrability of the parties' disputes, which there is not, any such doubt must be resolved in favor of the arbitration of each such dispute." (Emphasis added.)

the Agreements and are, therefore, subject to arbitration." (Emphasis added.) At the hearing on the motion, the defendants' attorney stated that he represented the defendants, that "[t]he agreement provides a very, very broad arbitration clause. It states pretty much any and all disputes between the parties regarding any matter in [or] arising under the agreement" shall be submitted to arbitration, and that "the intention of the parties was [that] the notes . . . were part of the agreement and subject to arbitration."

The plaintiff's subsequent demand for arbitration named all of the defendants, including each guarantor, as respondents. Attached to the demand was an explanation of the nature of the dispute, naming the debtor and all of the guarantors and citing their roles in the dispute. The defendants' attorney filed an answer and special defenses, naming the debtor and all of the guarantors as respondents. At the arbitration hearing, he stated that he represented "the respondents, Connecticut Disposal Service, Inc., Frank Perrotti & Sons, Inc., Call Peter, Inc., Ronald Bertasi, William Lockwood and Frank Perrotti, Jr."

Neither in these documents nor in the proceedings previously discussed did the defendants' attorney ever claim that the guarantors had not agreed to arbitrate. He never made any attempt to differentiate the guarantors' position from that of the debtor. He argued that the guarantors had not agreed to arbitrate only after the arbitrators issued a decision unfavorable to the guarantors.

"[T]he stated purpose of arbitration [is to avoid] the formalities, delay, expense and vexation of ordinary litigation." (Internal quotation marks omitted.) *Bennett* v. *Meader*, supra, 208 Conn. 362–63. In support of this policy aim, the court correctly based its decision that the guarantors were parties to the arbitration

agreements, in part, on the fact that they actively had sought the arbitration and resisted litigation.[9] By all appearances, the guarantors sought the benefits of arbitration, presumably deciding that litigation was a less desirable option. We agree with the court and hold that, in light of the defendants' conduct and the assertions that they made in their motion to dismiss, motion to stay and motion in opposition to a termination of the stay, they are estopped from now arguing that they never agreed to arbitrate disputes with the plaintiff.[10]

"There are two essential elements to an estoppel— the party must do or say something that is intended or calculated to induce another to believe in the existence of certain facts and to act upon that belief, and the other party, influenced thereby, must actually change his position or do some act to his injury which he otherwise would not have done." (Internal quotation marks omitted.) *Reinke* v. *Greenwich Hospital Assn.*, 175 Conn. 24, 28, 392 A.2d 966 (1978). Further, "[i]t is the burden of the person claiming the estoppel to show that he exercised due diligence to ascertain the truth and that he not only lacked knowledge of the true state of things but had no convenient means of acquiring that knowledge." (Internal quotation marks omitted.) Id., 28–29.

"[T]here must generally be some intended deception in the conduct or declarations of the party to be estopped, or such gross negligence on his part as amounts to constructive fraud, by which another has

---

[9] The court also found, pursuant to the positive assurance test; see footnote 4; that the guarantors were parties to the purchase and sale agreements that contained the arbitration clauses. We disagree. See *Scinto* v. *Sosin*, 51 Conn. App. 222, 230–38, 721 A.2d 552 (1998), cert. denied, 247 Conn. 963, 724 A.2d 1125 (1999).

[10] Although the court did not explicitly rest its holding on a theory of estoppel, this court may properly affirm a judgment on a ground different from that relied on by a trial court. *Paine Webber, Inc.* v. *American Arbitration Assn.*, 217 Conn. 182, 188, 585 A.2d 654 (1991).

been misled to his injury. . . . The modern estoppel in pais is of equitable origin, though of equal application in courts of law. . . . Its office is . . . to show what equity and good conscience require, under the particular circumstances of the case . . . ." (Citations omitted; internal quotation marks omitted.) *Novella* v. *Hartford Accident & Indemnity Co.*, 163 Conn. 552, 564, 316 A.2d 394 (1972). Estoppel is rooted in "the principle that no one shall be permitted to found any claim upon his own inequity or take advantage of his own wrong." (Internal quotation marks omitted.) Id., 565. "Estoppel is to protect the innocent and is based on fair dealing and principles of morality . . . ." Id., 566. "[C]ourts, applying equitable principles, have laid down the doctrine of equitable estoppel by which a defendant may be estopped by his conduct from asserting [statutory] defenses . . . ." (Internal quotation marks omitted.) *Williams* v. *Bartlett*, 189 Conn. 471, 482–83 n.9, 457 A.2d 290, appeal dismissed, 464 U.S. 801, 104 S. Ct. 46, 78 L. Ed. 2d 67 (1983); see, e.g., *Morris* v. *Costa*, 174 Conn. 592, 601, 392 A.2d 468 (1978) (defendant estopped from asserting statute of limitations defense); *First Connecticut Small Business Investment Co.* v. *Arba, Inc.*, 170 Conn. 168, 174–75, 365 A.2d 100 (1976) (defendant estopped from utilizing statute of frauds defense).

The principles behind the estoppel doctrine are advanced by our holding today. This is not a case in which a party has, from the outset, steadfastly argued that it never agreed to arbitrate. Here, the guarantors clearly argued to the court several times that they agreed to arbitrate disputes with the plaintiff. In so doing, their intent was to induce the plaintiff into pursuing an alternative dispute resolution strategy, which he in fact did. The plaintiff abandoned his initial effort to litigate the matter and instead complied with the guarantors' demand to arbitrate by not objecting to

their motion to stay and, ultimately, by submitting the dispute to the arbitrators. He prepared for and attended the arbitration hearing with the understanding that it would bring the matter to a close. In fact, all of the parties fully participated in the arbitration and none complained to the arbitrators that they had not agreed to arbitrate.

The guarantors, after such full and willing participation, obtained an unfavorable result at the arbitration hearing. They then sought another chance to retry the issues in a second forum and, thereby, to eliminate the advantages of speed, savings and finality that were contemplated in the parties' choice of an alternative dispute resolution mechanism. Two and one half years after the plaintiff initially instituted his civil action, which the guarantors successfully caused to be stayed to allow for arbitration, the guarantors argued that the Superior Court was in fact the proper forum for the dispute. Essentially, they asked the court to approve their wasting of the plaintiff's time and to force the plaintiff to abandon the successful result he had secured at the arbitration hearing. The court, after considering all of the prior proceedings, had no difficulty discerning that the parties had agreed to arbitrate and rejected the guarantors' request to vacate the award. We agree with the court.

In *Sawmill Brook Racing Assn., Inc.* v. *Boston Realty Advisors, Inc.*, 39 Conn. App. 444, 455, 664 A.2d 819 (1995), we held that nonsignatories to an arbitration agreement had bound themselves to arbitrate via their conduct and were estopped from arguing after the fact that the statutory writing requirement was not satisfied. In that case, as in the present one, the defendants had accepted the benefits of the agreement and manifested their intent to arbitrate by willingly participating in the proceedings. They filed a counterclaim in the arbitration proceedings and a motion to dismiss pending litiga-

tion on the ground that the matters at issue were subject to arbitration. The proceedings in that case lasted three years, but the defendants objected only after an unfavorable award had been issued. Id.

Here, the timing of the guarantors' objection is very similar, but their earlier conduct evidencing an agreement to arbitrate is much clearer. Along with the debtors, the guarantors petitioned the court for arbitration not once, but on three separate occasions. We note also that their agreement to arbitrate is expressed in several signed writings, that is, the motions that they submitted to the court demanding arbitration. Further, they filed an answer and special defenses with the arbitrator and, through their representative, attended and participated in the arbitration sessions.

It cannot be said that the plaintiff in this case, had he exercised due diligence, could have discerned that the guarantors, as nonsignatories to the purchase and sale agreements that contained the arbitration clauses, had not agreed to arbitrate the disputes over the promissory notes. In fact, the plaintiff initially assumed that the matter was not arbitrable and, therefore, instituted a civil action. The plaintiff had no reason to believe that the guarantors did not agree to arbitrate when the guarantors clearly and repeatedly stated that they *did* agree to arbitrate and made representations to the court of such an agreement, coupled with viable legal arguments supporting their assertions.[11] The plaintiff reasonably relied on the guarantors' conduct and statements, and proceeded to arbitration on the assumption that the guarantors would not later contest their status as parties to the arbitration agreements.

---

[11] See footnotes 6 and 8. Our Supreme Court has held that an agreement to arbitrate need not necessarily be signed by both parties to be valid and enforceable under § 52-408. *Schwarzschild* v. *Martin*, 191 Conn. 316, 321–22, 464 A.2d 774 (1983).

Like the defendants in *Schwarzschild* v. *Martin*, 191 Conn. 316, 321, 464 A.2d 774 (1983), who unsuccessfully sought to have an arbitration award invalidated on the ground that there was no valid agreement to arbitrate, the guarantors in the present case sought the benefits of arbitration—avoiding the expense and delay of court proceedings—and then repudiated their agreement to participate after receiving an unfavorable result. Our response is the same: "One enjoying rights is estopped from repudiating dependent obligations which he has assumed; parties cannot accept benefits under a contract fairly made and at the same time question its validity." Id., citing *Mozzochi* v. *Luchs*, 35 Conn. Sup. 19, 23, 391 A.2d 738 (1977). The guarantors may not accept the benefits of submitting their dispute to an arbitration panel, only to reject unfavorable results of that process.

The guarantors argue that the outcome of this case is instead dictated by our holding in *Scinto* v. *Sosin*, 51 Conn. App. 222, 721 A.2d 552 (1998), cert. denied, 247 Conn. 963, 724 A.2d 1125 (1999). In *Scinto*, we concluded that a party who had executed a guaranty agreement ancillary to a construction contract containing an arbitration clause, but who did not sign the construction contract itself, was not bound to arbitrate. Id., 237–38. The guarantors urge us to reach the same result in this case. The facts of *Scinto*, however, are inapposite to those of the present case. The guarantors in *Scinto* resisted arbitration from the start. They sought and received injunctions barring arbitration proceedings against them. In contrast, the guarantors in this case actively and repeatedly insisted that they were parties to arbitration, made numerous submissions to the court in which they claimed to be parties to arbitration and participated fully as parties to the arbitration. Arbitration was completed quickly and a decision was issued soon thereafter. The guarantors objected only

after an unfavorable result was obtained. To hold that no agreement to arbitrate existed and, therefore, to indulge the guarantors' sudden desire to litigate at this late stage would fully frustrate the aim of arbitration to provide a rapid and efficient alternative dispute resolution mechanism for parties who willingly choose to participate. Under the circumstances of this case, we have no difficulty holding that the court was not clearly erroneous in finding that the guarantors and the plaintiff had agreed to arbitrate and that the court correctly confirmed the arbitrator's award.

## II

The guarantors also claim that the court improperly refused to vacate the arbitration award pursuant to General Statutes § 52-418[12] because the arbitrators exceeded their authority in making the award. Specifically, they argue that the plaintiff's submission to the arbitrators did not make any demand against the guarantors or claim any interest in the guarantees.[13] There-

---

[12] General Statutes § 52-418 (a) provides in relevant part: "Upon the application of any party to an arbitration, the superior court . . . shall make an order vacating the award if it finds any of the following defects: (1) If the award has been procured by corruption, fraud or undue means; (2) if there has been evident partiality or corruption on the part of any arbitrator; (3) if the arbitrators have been guilty of misconduct in refusing to postpone the hearing upon sufficient cause shown or in refusing to hear evidence pertinent and material to the controversy or of any other action by which the rights of any party have been prejudiced; or (4) the arbitrators have exceeded their powers or so imperfectly executed them that a mutual, final and definite award upon the subject matter submitted was not made."

The guarantors have argued this issue under subsections (3) and (4) of the statute. We analyze it under subsection (4) because that was the analysis presented to the trial court and because subsection (3) is clearly inapplicable to the guarantors' claim. There is nothing in the record or in the parties' briefs to suggest that the arbitrators refused a requested postponement, denied the admission of proffered evidence or prejudiced the rights of the guarantors in any way.

[13] In a typewritten document entitled, "Nature of the Dispute," which was appended to its demand for arbitration, the plaintiff stated:

"1. By promissory note dated January 2, 1985, Connecticut Disposal Service, Inc., promised to pay to the order of R & R Sanitation Co., Inc. ('R &

fore, the guarantors assert that the award against them went beyond the scope of the submission. This claim is without merit.

"The scope of judicial review of arbitration awards is very narrow. Our courts favor arbitration as a means of settling differences and uphold the finality of arbitra-

R'), the sum of Two Million Two Hundred Thirty-Eight Thousand Nine Hundred Thirty-Six ($2,238,936.00) and 00/100 Dollars (hereinafter referred to as 'Note 1'). A copy of Note 1 is incorporated herein and attached hereto as Exhibit 'A.'

"2. By guaranty dated March 4, 1985, Frank Perrotti & Sons, Inc., Call Peter, Inc., Frank Perrotti, Jr., Ronald Bertasi and William Lockwood each agreed to guaranty payment of Note 1. A copy of this guaranty is incorporated herein and attached hereto as Exhibit 'B.'

"3. By endorsement dated March 26, 1985, R & R assigned all of its right, title and interest in Note 1 to Bernard Green, Trustee for Gerald T. Raynor, Alfred L. Bowes, Jr., and Mary E. Bowes.

"4. By promissory note dated May 7, 1986, Connecticut Disposal Service, Inc., promised to pay to the order of Connecticut Recycling Systems, Inc. . . . the sum of Six Hundred Thirty-Five Thousand Four Hundred Seventy-Five ($635,475.00) and 00/100 Dollars (hereinafter referred to as 'Note 2'). A copy of Note 2 is incorporated herein and attached hereto as Exhibit 'C.'

"5. By guaranty dated May 7, 1986, Frank Perrotti & Sons, Inc., Call Peter, Inc., Frank Perrotti, Jr., Ronald Bertasi and William Lockwood each agreed to guaranty payment of Note 2. A copy of this guaranty is incorporated herein and attached hereto as Exhibit 'D.'

"6. By endorsement dated June 2, 1986, Connecticut Recycling Systems, Inc., assigned all of its right, title and interest in Note 2 to Bernard Green, Trustee for Gerald T. Raynor, Alfred L. Bowes, Jr., and Mary E. Bowes. . . . "

The document further detailed the late payments on notes one and two, and the balances yet due.

Each guaranty provides in relevant part: "The Guarantors . . . do hereby jointly and severally, unconditionally guaranty the full and punctual payment, when due [of the installments on the notes]. . . . The liability of the Guarantors shall be effective immediately without any suit or action against the maker of the note . . . . This guaranty shall inure to the benefit of the holder and to the benefit of its assigns, and it shall be binding upon the Guarantors . . . ."

In light of the foregoing, the guarantors' arguments that "[t]he arbitration submission . . . fails to claim that the Appellants failed to do anything or owe Appellee or its predecessor in interest any amount" and that "[w]hile the Demand [for arbitration] claims that the Notes were assigned to Plaintiff, it does not make a corresponding claim that the Guarantees were assigned to Plaintiff," are baseless and do not merit further discussion.

tion awards except where an award clearly falls within the proscriptions of § 52-418 of the General Statutes. . . . [A]ny challenge to an award . . . on the ground that the arbitrators exceeded or imperfectly performed their powers is properly limited to a comparison of the award with the submission. . . . If the award conforms to the submission, the arbitrators have not exceeded their powers." (Internal quotation marks omitted.) *Exley* v. *Connecticut Yankee Greyhound Racing, Inc.*, 59 Conn. App. 224, 228, 755 A.2d 990, cert. denied, 254 Conn. 939, 761 A.2d 760 (2000).

"If the parties have agreed in the underlying contract that their disputes shall be resolved by arbitration, the arbitration clause in the contract is a written submission to arbitration. . . . This submission can be invoked by a demand for arbitration by one or both parties when a dispute arises. The agreement for submission constitutes the charter for the entire ensuing arbitration proceedings." (Citations omitted; internal quotation marks omitted.) Id., 229–30. "The authority of the arbitrator to adjudicate the controversy is limited only if the agreement [to arbitrate] contains express language restricting the breadth of issues, [or] reserving explicit rights . . . ." (Internal quotation marks omitted.) Id., 229.

The arbitration clauses in the purchase and sale agreements in the present case, referenced by the guarantors when they agreed in court to arbitrate, were broad and unrestricted. They provided for arbitration "concerning any matter provided for herein or arising hereunder . . . ." See footnote 3. At the hearing on the motion to terminate the stay, at which the guarantors agreed to arbitrate, their attorney stated that "[t]he agreement provides a very, very broad arbitration clause. It states pretty much any and all disputes between the parties regarding any matter in [or] arising under the agreement" shall be submitted to arbitration.

The plaintiff made a demand for arbitration with the American Arbitration Association pursuant to the arbitration clauses, naming all of the defendants, including the guarantors, as respondents and describing and appending the promissory notes and guarantees that were the subject of the parties' dispute. See footnote 13. The arbitrators' award addressed precisely this subject matter, determining the amounts owed on each note and directing that they be paid by the defendants. We hold that the court properly refused to vacate the arbitration award because it was within the arbitrators' powers pursuant to the agreement of the parties.

The judgment is affirmed.

In this opinion the other judges concurred.